Petree & Bristow, &c., vs. Bell, &c.

CASE 11—PETITION ORDINARY—JUNE 14.

# Petree  &  Bristow,  &c.,  vs.  Bell,  &c.

APPEAL FROM CHRISTIAN CIRCUIT COURT.

A delay of nearly two years without a step taken in the case or a motion made indicating an intention to prosecute the suit, without an excuse offered or any explanation given for the delay, is such gross and culpable negligence in the prosecution of the suit as to deprive the plaintiffs of the benefit of a *lis pendens*.

FELAND & EVANS,                                    For Appellants,

CITED—

8 *B. M.*, 303–4.

6 *B. M.*, 101.

4 *Bibb*, 102 *and* 466.

5 *J. J. Mar.*, 296, 577.

11 *B. M.*, 43.

1 *Bibb*, 203.

3 *Bibb*, 2.

4 *Littell*, 241–242.

3 *Mar.*, 299.

1 *Mar.*, 58, 536.

2 *Mar.*, 33.

*Littell's Select Cases*, 193, 358.

2 *J. J. Mar.*, 547.

3 *Mon.*, 351.

2 *Bibb*, 418;  *Griffin vs. Davis.*

2 *Bibb*, 422.

5 *Littell*, 241.

*Hardin*, 37.

7 *Mon.*, 599, 616.

2 *Littell*, 121.

Petree & Bristow, &c., vs. Bell, &c.

6 *Mon.*, 205.

3 *Dana*, 547.

4 *Dana*, 258, 263.

10 *Cal.*, 529; *Cummings vs. Coe.*

2 *Met.*, 285; *Lewis vs. Quinker.*

5 *Dana*, 271.

18 *B. M.*, 237–8.

3 *B. M.*, 579–580; *Oldham vs. Scrivener.*

11 *Cal.*, 238; *Ritter vs. Scammell.*

23 *Penn.*, 193; *Young vs. Kimball.*

6 *Maryland*, 71; *Eschback vs. Pitts.*

McPHERSON & CHAMPLIN,                                    For Appellees,

CITED—

*Civ. Code, secs.* 225, 228.

*Rev. Stat., chap.* 91, *art.* 1, *sec.* 10.

6 *B. M.*, 488 *to* 493; *Owens vs. Patterson.*

7 *B. M.*, 226; *Kelly vs. Lusk.*

3 *Met.*, 246; *Finnell vs. Cox.*

5 *B. M.*, 238; *Hally vs. Oldhams.*

CHIEF JUSTICE PETERS DELIVERED THE OPINION OF THE COURT:

Appellants brought their separate actions against L. L. Leavell and others, on the 18th of June, 1861; and, for grounds stated in their affidavits filed at the time, they caused attachments to issue against the estate of said Leavell—which had descended to him from his father— in the hands of the administratrix and the tenants of said decedent.

The orders of attachment were placed in the hands of Graves, deputy sheriff of Christian county, on the day they were issued, but were never returned until March, 1865.

Subsequently, summonses were issued and executed on the defendant, and at the October term, 1863, of the

court, personal judgments were rendered against the defendant in favor of Petree & Bristow, and Hayes, respectively, the actions having been at the September term, 1861, of said court, consolidated. From the time of their consolidation until the rendition of the personal judgments, there does not appear to have been an order made, or a step taken in the cases, except to sue out a summons against the defendant; and from October, 1863, until March, 1865, nothing seems to have been done, not even so much as to have an order for a continuance of the cause. At the last named period an amended petition was filed, in which it is alleged that said orders of attachment were placed in the hands of Graves, deputy for R. T. McDaniel, then sheriff of Christian county, on the 18th day of June, 1861, and while in full force they were, by said deputy, levied on the undivided interest of L. L. Leavell, jr., in the estate of his father, L. L. Leavell, deceased, who had died intestate; and before the next succeeding term of said court the county of Christian was invaded and occupied "by the army of the so-called Confederate States," and the courts of said county were suspended for a considerable time thereafter by reason of said invasion and occupation; and by reason thereof said orders of attachment, with the levy indorsed thereon, were not returned to the clerk's office of this court until the — day of 1865, and after said McDaniel had ceased to be sheriff; that they had made repeated efforts to have said attachments returned, but were unable to have them returned earlier by reason of the absence of said Graves, who left the county and State while the county was occupied as aforesaid, and has but recently returned.

It is further alleged, that, after the attachments were levied, L. L. Leavell sold his undivided interest in the

estate of his father to Geo. B. Leavell, who had notice of the levy of said attachments on said interest, and that the interest of said Geo. B. and L. L. Leavell were subsequently levied upon and sold, by virtue of executions which had issued against their estates, and of which John F. Bell was the purchaser at said sheriff's sale; and that he, said Bell, claims, by virtue of said sale and purchase, to be the owner of the undivided interest of said L. L. Leavell, jr. They assert, that, by virtue of the levy of their attachments, they acquired a lien on the interest of L. L. Leavell, jr., as aforesaid, which they had neither forfeited nor lost, and which they pray may be enforced, denying that Bell acquired any title, by reason of his said purchase, superior or prejudicial to the rights which they acquired by the levy of their attachments.

It is not alleged in either of the petitions that Bell, the purchaser, had *actual* notice of the levy of the attachments or the existence of the actions. Four years had nearly elapsed, and the officer had made no return of the attachments; and if it be conceded that, on account of the invasion of Christian county by a part of the forces of the Confederacy, and the officer in whose hands the attachments were placed had left without returning them, and they could not be procured, no reason nor excuse is assigned or offered why other attachments were not sued out and caused to be levied. We have already seen that summonses were sued out and actually executed, and a personal judgment obtained, as early as October, 1863, after the institution of the actions.

It is not alleged that there was any interruption in the holding of the courts from 1862.

The question then resolves itself into an inquiry whether appellants were guilty of culpable negligence in prepar-

ing and prosecuting their suit, and therefore be made to yield to the purchase of Bell.

In *Clarkson, &c., vs. Morgan's devisees* (6 *B. M.*, 441), the doctrine as applicable to a *lis pendens*, as laid down by Sugden on vendors, is quoted with approbation, and is to the following effect: "Relief being sought against a *bona fide* purchaser who bought, *pendente lite*, without *actual notice*, is, however, considered a hard case in equity, and although the court cannot refuse its aid against him, yet the plaintiff is by no means a favorite, and therefore, if he make a *slip in his proceedings*, the court will not assist him to rectify the mistake."

We are not prepared to say that the delay, from the succeeding term, after the attachments were sued out, until October, 1863, to renew the attachments and to prepare their case, in view of the then disturbed condition of the country, would amount to such laches as to deprive them of the benefit of a *lis pendens*; but a delay of nearly two years thereafter, without a step taken in the case or a motion made indicating an intention to prosecute the suit, without an excuse offered or any explanation given for the delay, is such gross and culpable negligence in the prosecution of their suit as to deprive them of the benefit of the rule.

In this view of the case, it is not necessary to decide the question of the competency of the witnesses whose depositions were rejected, as *actual notice* to Bell is not alleged.

Wherefore, the judgment is *affirmed*.