JUDGE COFER
delivered the opinion op the court.
Á suit was commenced in the Gallatin Circuit Court in November, 1825, by one portion of the heirs at law of George Nicholas against another portion of said heirs for the partition of a large tract of land owned by them. In 1838 the county of Carroll was established, and included within its boundary the whole of the land which the heirs of Nicholas sought to partition. In 1839, and before partition had been made, and before a decree for that purpose, three fi. fas. for cost were issued against Nicholas’s heirs and placed in the hands of the sheriff of Carroll County, who levied them on seven or eight hundred acres of the land sought to be partitioned by the suit in Gallatin. The land levied on was sold, and John C. Lindsey became the purchaser and received the sheriff’s deed. In 1846, the Gallatin suit being still pending, the complainants amended their bill, and set up the levy upon and sale of the land and its purchase by Lindsey, and sought to vacate the sale and conveyance to him, and to eject Craig, O’Neal, and others, who had entered thereon under purchases from Lindsey, on the ground that the levy and sale were collusive and fraudulent.
To this amended bill, Walton Craig, William O’Neal, John Scott,-Mayland, and John C. Lindsey were made defendants. In 1865 judgment was rendered by the Gallatin court in this branch of the case, declaring the sale under the *434 executions to be fraudulent and void, and canceling the deed from the sheriff to Lindsey, and awarding a writ habere facias for the land. From that judgment an appeal was prosecuted to this court by Craig, the heirs of William O’Neal, and John C. Lindsey and others, and the judgment as to Craig and O’Neal’s heirs was reversed, but was affirmed as to the other appellants.
Writs of possession were then sued out, and all persons in possession of any part of the land embraced by the sheriff’s deed to Lindsey were turned out of possession, except Craig and O’Neal. Soon thereafter these suits were instituted in the Carroll Circuit Court by tenants, who claimed as remote vendees of John C. Lindsey to be restored to the possession from which they had been turned out by the sheriff, acting under the writ of habere facias from the Gallatin Circuit Court.
The plaintiffs in each of the cases sought relief on the ground that, although the sale by the sheriff under the fi. fas. against Nicholas’s heirs was fraudulent and therefore invalid as to the participants in the fraud, it was not void except for fraud; and that as they had purchased in good faith for fair prices, and had paid for the land claimed by them respectively without notice of the fraud in the sale, the sale was valid as to them; that, although they had been dispossessed under the writ from Gallatin, they were not parties to that suit, and had no notice of its pendency, and could not be bound by any judgment rendered therein. They also alleged that the Gallatin court had no jurisdiction as to them.
To these suits various defenses were set up, only three of which are now relied upon, viz.: 1. That the levy and sale were absolutely void; 2. That the levy and sale having been made while the suit for partition was pending in Gallatin, the purchases by Lindsey and his vendees were made pendente lite, and that they therefore held subject to such judgment as might *435 be rendered in the Gallatin court; 3. That the rights of the parties had been adjudicated in the suit in Gallatin, that judgment having been affirmed as to all except Craig and O’Neal, and that the plaintiffs below were either parties to that litigation or privies to those who were, and are bound by that judgment.
It appears that the sheriff of Carroll sold the land in June, 1839, and made a deed to John C. Lindsey, the purchaser, in July of the same year.
In order to a correct understanding of the facts it will be necessary to state the derivation of title claimed by plaintiffs in each of the three cases separately.
In case No. 1, of R. Hawes, &c. v. John J. Orr, &c., it appears that John C. Lindsey, on the 1st of February, 1840, sold and conveyed two hundred acres of the land conveyed to him by the sheriff to Richard C. Lindsey for the recited consideration of one dollar. On the 15th day of November, 1842, R. C. Lindsey sold and conveyed tbe same tract to John Scott and John B. Orr in consideration of one thousand dollars cash. The tenants in possession who were turned out of the land in contest in this case entered and held under Scott and Orr.
In the case of Hawes, &c. v. Rice, &e., it appears that John C. Lindsey, on the 25th of March, 1841, in consideration of one dollar, sold and conveyed a part of the land embraced by the sheriff’s deed to him to Lewis Smith, who on the 16th of February, 1843, sold and conveyed twenty-nine acres three roods and thirty-five poles thereof to John G. Stevens for the same consideration. On the 25th of November, 1841, by deed signed but not acknowledged or recorded, Smith sold and conveyed to John Montgomery ninety-three acres of his purchase from John C. Lindsey for seven hundred and twenty dollars, all of which has been paid; and in 1843 Montgomery sold and conveyed forty-two and a half acres of his purchase *436 to I). L. Rice for five hundred dollars in hand paid; and on the 9th of April, 1845, Montgomery sold and conveyed the residue of his purchase to James H. Rice for three hundred and seventy-five dollars in hand paid. The tenants in possession, and who were turned out by the writ from Gallatin, held and claimed under this title.
In Hawes, &c. v. Green, &c., the tenants turned out claimed under the following conveyances, viz.: The deed of March 25, 1841, from John C. Lindsey to Lewis Smith, before referred to, and a deed from the sheriff of Carroll County to Stratton, dated March 25, 1843, and made in pursuance of a levy and sale of one hundred and five acres of said land under an execution against Lewis Smith; and a deed from Stratton to Bennett Green, dated 27th day of September, 1844, and made in consideration of five hundred and twenty-seven dollars and fifty cents in hand paid.
The claimants under these several deeds seem to have entered into possession soon after the deeds were made, and to have held and claimed the land as their own until dispossessed as before stated. The circuit court restored them to possession, and the heirs of Nicholas prosecute these appeals from those judgments.
1. The first question presented is whether the execution, sale, and purchase by John C. Lindsey were void. This question was presented in the appeal of Walton Craig, &c. v. Richard Hawes, &c. (MS. Opinion, May 27, 1868), and it was then held that the sale was not ipso facto, et constructions legis void, and this adjudication is conclusive upon this point, which need not therefore be further noticed.
2. Was there such a lispendsns as will affect the appellees? It will have been observed that the land now in contest passed out of the hands of all the parties supposed to have had any connection with the alleged frauds committed in the levy, sale, and purchase under the fi. fas. into the hands of the appellees *437 or their vendors, who were purchasers in good faith and for a valuable consideration, and received conveyances and entered into possession of the land claimed by the appellees respectively prior to the filing in the Gallatin court of the amended bill attacking and seeking to set aside the sale and sheriff’s deed under the executions. None of the appellees were parties to that suit originally, or to the amended bill, except the heirs of Scott, who are a part of the appellees in the case of Hawes v. Orr, &c.; but so far as they were concerned the court below dismissed their petition, because they were barred by the judgment in that case.
It is a well-settled rule of law that a party purchasing property which is at the time the subject of litigation takes it subject to the judgment that may be rendered in the case. (Story’s Equity, secs. 405, 406.) This rule is one of necessity-for otherwise a party might be defeated in the pursuit of his legal rights by repeated alienations by the person in wrongful possession of the property sued for.
But in order to bind a purchaser by a judgment rendered in a case to which he was not a party the judgment must be the result of litigation pending at the time of his purchase, and not of a new litigation commenced afterward. When the vendors of the appellees purchased, the only litigation pending in respect to the land in contest was a suit among the heirs of George Nicholas for partition; and no judgment having been rendered on account of that litigation which affects the title of appellees, the doctrine applicable to pendente lite purchasers has no application to them. The judgment relied upon to bar them was the result not of litigation pending when their vendors purchased, but of litigation which arose upon an amended bill filed in 1846, after they had purchased and paid for the land and taken possession. So far as the pendency of the suit can affect appellees, the matter brought into it by the amended bill will not have relation to the time of the filing *438 of the original, but the suit as to the matters set up in the amendment will be considered as pending only from the time the amendment was filed. (Stone & Warren v. Connelly, 1 Met. 656; Dudley v. Price, 10 B. Mon. 88.)
It seems to us therefore to be clear that the appellees are unaffected by the judgment declaring the levy and sale fraudulent and void, and that as to them the sale and deed, as already decided, not being absolutely void, passed the title, unless some judgment has been rendered in the litigation originally pending for partition, and independent of the amended bill which affects them; and this gives rise to the question whether the pendency of a suit for the partition of land among the owners withdraws the land sought to be divided from the reach of all execution against such owners. That it does not we think is entirely clear.
It was said by this court in Clarkson v. Barnett’s heirs (14 B. Mon. 133) that there are cases in which courts of equity will enforce their decrees against all persons who may have acquired the possession of the land during the time the suit was pending; but the cases alluded to are those in which the land is sued for, or .where a suit is brought to subject it to sale for the payment of a debt, and pending the suit a person has gained possession by purchasing the right of the original defendant.
In that case the defendant had entered on the land, claiming it as his own, pending a suit by the guardian of infants to sell it, and it was attempted to apply the doctrine applicable to a pendente lite purchaser to him; but the court held it had no application.
The principle- of that case applies to this. The litigation was between the owners for partition, and the executions were against all the owners; and there is no rule of law or public policy which exempted the property from levy and sale. The plaintiffs in execution had a right to enforce payment, and the *439 debtors could not escape it by a suit among themselves for partition. This case furnishes forcible illustration of the unreasonableness of the principle contended for. The suit for partition was pending for forty years, and if the position contended for by the counsel for appellants be sound, during all this time the owners were protected by their own litigation from the payment of their debts.
We recognize the doctrine that the court first acquiring jurisdiction has a right to go on until it has performed its office in reference to the subject-matter in litigation, and will not allow itself to be ousted of its jurisdiction, or permit the thing in lite to be wrested from it so that it can not execute its judgment; but that principle has no application to these cases.
The court could have gone on, notwithstanding the sale, and made partition, but should have treated the execution purchasers just as it would have done if they had been the vendees by private contract of the heirs of George Nicholas; that is, it should have excluded the land they had purchased from the division. If the undivided share of one of the heirs had been levied on and sold, the purchase would have been pendente lite, and the purchaser would have been compelled to accept such interest as was allotted to him whose share he purchased; but the purchaser in these cases having bought the interest of all in so much of the land as was sold, his rights were unaffected by the suit.
But there is another ground upon which the appellants must fail. A party who claims the benefit of a lis pendens against a bona fide purchaser must show that the suit was prosecuted with some diligence, and that there was no unnecessary and unreasonable delay in prosecuting it to a final termination. (Erhman v. Kendrick, 1 Met. 149; Watson v. Wilson, 2 Dana 406; Clarkson v. Morgan, 6 B. Mon. 447.)
The suit in Gallatin was commenced in October, 1825, and *440 no final decree for partition was rendered until after 1846. At the April term of the court in 1828, and at each succeeding term to and including the August term, 1833, the only orders made in the case were orders of continuance; and at the February term, 1834, the cause was dismissed, because “ the complainants, being solemnly called, came not, but failed further to prosecute herein.” At the same term the order dismissing the suit was set aside, and the cause was continued, until the next term of the court, and no other orders were made except orders of continuance until the June term, 1842. It thus appears that for a period of fourteen years, including the time at which the sheriff’s sale was made, and the dates of the sales by the purchaser, or his vendees to bona fide purchasers for value, not a single step was taken toward accomplishing the object of the suit. Such unexampled laches can not be permitted to affect the rights of any one except those whose want of diligence has thus allowed a suit in court to linger without attention. If appellees and their vendors had been actually cognizant of the pendency of the suit, they and all others had a right to treat it as the parties had, as abandoned.
Wherefore the several judgments appealed from are affirmed.
Judge Pryor not sitting.