## Roberts v. Cardwell.

(Decided June 17, 1913.)

### Appeal from Breathitt Circuit Court.

1. Lis Pendens—Vendor and Purchaser.—A lis pendens purchaser
   from one who is a party to the action, and who has been divested
   of title by the judgment entered, acquires no title, and where his
   vendor, for a period of nearly twenty years, contests the action
   without raising the plea of fraud, the lis pendens purchaser is
   precluded by the judgment, and cannot attack the judgment and
   the subsequent proceedings on the ground of fraud.

2. Lis Pendens—Laches—Adverse Possession.—Though a purchaser
   pendente lite is bound by any judgment that may be rendered
   against the person from whom he purchased, yet where there is
   an unreasonable delay in the prosecution of the suit, a party may
   lose the benefit of the lis pendens and deprive himself of any
   remedy against a bona fide purchaser, and such purchaser may
   rely upon the statute of limitations.

G. W. FLEENOR and MARTIN T. KELLY for appellant.

McGUIRE & McGUIRE, ADAMS & HOLLIDAY and HAZELRIGG
& HAZELRIGG for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY,
COMMISSIONER—Reversing.

In October, 1886, William Smith died intestate in
Breathitt County, Kentucky, leaving surviving him his
widow, Nancy, and one son, George Smith. In July,

1887, John W. Cardwell, a creditor of the decedent, brought suit in the Breathitt Circuit Court to settle his estate. In this action he alleged that the decedent did not leave sufficient personal property to pay his debts, and he asked that a certain described piece of real estate be sold for that purpose. In 1889 Charles J. Little filed his petition in the action asking that he be made a party and that his petition be taken as his answer and cross petition. In his petition he alleged that in July, 1887, more than six months after the death of William Smith, one Harry Baldwin, for a good and valuable consideration paid to Nancy Smith and George Smith, purchased from them the tract of land described in the petition, and on that day the same was conveyed to plaintiff by deed. In August, 1888, plaintiff sold and conveyed the land to him, and in 1889 Nancy and George Smith conveyed it to him. Immediately after the purchase he took possession of the land and was in possession at the time he filed his petition. He prayed that the petition be dismissed and that he be adjudged the owner of the land. In 1888, and prior to the filing of the petition by Little, an order was entered referring the case to the master commissioner to report claims. The commissioner filed two reports during that year. In his last report he stated that there were no funds in the hands of the administrator, and that it was necessary to sell the real estate of the decedent to pay his debts. In 1889 the reports of claims, excepting two small items, were confirmed. In 1891 the action was submitted and a judgment entered directing the commissioner to sell the land mentioned in the petition for the purpose of paying the debts due by the estate. In 1894 the commissioner filed his report of sale, reciting that the real estate was sold to W. T. Hogg for $418. On the 13th day of September, 1892, it appearing to the satisfaction of the court that the papers in the case were lost, the case was referred to the master commissioner to supply same. On March 17, 1894, a similar order was again entered. In March, 1896, Cardwell made a motion to confirm the commissioner's report of sale. In 1896 C. J. Little filed his petition to be made a party defendant, and plaintiff excepted. On November 17, 1898, Emily Crane, executrix of W. T. Hogg, assigned the bid of W. T. Hogg to J. W. Cardwell. On November 23, 1899, plaintiff made a motion to have the commissioner's report of sale confirmed. On June 21,

1900, the case was referred to the master commissioner for the purpose of supplying the lost papers. On November 9, 1900, the commissioner filed his report supplying certain pleadings and papers in the case. On November 2, 1900, C. J. Little filed a substituted petition and asked that it be taken for the original petition and filed by him and be treated as his answer to plaintiff's petition. In June, 1909, Little filed exceptions to the commissioner's report of sale. Thereafter, at the same term, the case was submitted on Cardwell's motion to have the sale confirmed and a deed made, and upon the exceptions filed by Little to the report of sale. The judgment recited that the court "finds that said Little's petition to be made a party was filed on the 4th day of January, 1899, setting up claim to the land described in the petition, and that the judgment ordering said sale was made at the September term, 1891. He further finds that the matters and things claimed by said Little were settled by said judgment." The court further overruled Little's exceptions to the commissioner's report of sale and entered an order confirming the sale and directing a deed to be made to the assignee of the purchaser. Thereupon C. J. Little prosecuted an appeal to this court, where it was held that the judgment of sale of 1891 was a final, adverse and appealable determination of the claim of title to the land asserted in his pleading. It was further held that as Little had not appealed from that judgment in time, his appeal should be dismissed. Little v. Cardwell, et al., 122 S. W., 799.

On June 26, 1911, plaintiff, J. W. Cardwell, alleging that he was the owner of a certain described tract of land and in possession thereof, brought this action against S. S. Roberts to enjoin him from trespassing thereon. Roberts filed an answer denying plaintiff's title to the land and pleading title in himself by adverse possession. Thereupon plaintiff filed a reply setting up all the proceedings in the action of John W. Cardwell, v. George W. Smith, Administrator, &c. He further pleaded that C. J. Little was a *pendente lite* purchaser of the land sold in that action, and that the defendant, Roberts, claimed title under and by virtue of a purchase from said Little during the pendency of the action; that both Little and the defendant, Roberts, purchased with a knowledge of the pendency of the action; that Little was a party to that action and Rob-

erts was a privy of the said Little, and that both were bound by the judgment, orders and decrees entered in that suit, and estopped from setting up any claim to the land to the contrary. The reply also alleges that in the year 19..........., a writ of possession was placed in the hands of the sheriff of Breathitt County to be executed, and while the same was alive and in full force and effect said writ was duly executed upon defendant, and he was dispossessed of said property, and plaintiff was put in possession thereof by said sheriff. Thereupon defendant, Roberts, filed a rejoinder, in which he denied the allegations of the reply, including many allegations shown by the record in the case of J. W. Cardwell v. George Smith, Admr., &c. In another paragraph he alleged facts going to show that the judgment of 1891 was fraudulently obtained, and that all of the further orders and judgments entered thereafter were also obtained by the fraud of the plaintiff, Cardwell. He further pleaded laches on the part of said Cardwell in the prosecution of this suit, and set up his claim to the land by adverse possession.

It will be observed that the action pleaded in bar of defendant's right of recovery was brought prior to the enactment of the act of 1896, requiring the filing of a *lis pendens* notice in the office of the county clerk. The question before us is, therefore, controlled by the law in force prior to the enactment of that statute. The doctrine of *lis pendens* as to persons and property within its operation is that the court having jurisdiction of the suit or action is entitled to proceed to the final exercise of that jurisdiction, and that it is beyond the power of any of the parties to the action to prevent its doing so by any transfer or other act made or done after the service of the writ or the happening of such other act as may be necessary to the commencement of *lis pendens*. If any of the parties, after the *lis pendens* has become operative, attempts any transfer of the subject matter of the litigation, or to create any encumbrance or charge against it, or to enter into any contract affecting it, or to deliver possession of it to another, the action or suit may proceed without taking any notice whatever of such transfer, encumbrance or change in possesion, and the final judgment or decree, when entered, may be carried into effect notwithstanding the attempted dealing with the subject matter thereof. Moons v. Crowder, 72 Ala., 79; Norton v. Birge,

35 Conn., 250; Kellar v. Stanley, 86 Ky., 24; Copenheaver v. Huffaker, &c., 6 B. Mon., 18. The effect of the *lis pendens* is to keep the subject matter of the litigation within the control of the court, and to render the parties powerless to place it beyond the reach of the final judgment. One acquiring an interest *pendente lite* is sometimes, on his application, permitted to appear in the action and defend or prosecute in the place of the person to whose interest he has succeeded. The court is not, however, bound to permit him to do so, in the absence of a statute conferring upon him this right. Whether, however, he appears in the cause or not, and whether he has any actual notice of its pendency or not, the judgment, when rendered, must be given the same effect as if he had not acquired his interest or as if he had been a party before the court from the commencement of the proceeding. His interests are absolutely concluded by the final determination of the suit. Galbreath v. Estes, 38 Ark., 599; Jackson v. Andrews, 7 Wend., 152; Jones v. McNarrin, 68 Me., 334, 28 Am. St. Rep., 66; Kellar v. Stanley, *supra.* However, the prosecution of the suit with reasonable diligence is essential to the continued operation of the law of *lis pendens,* and the benefit of a *lis pendens* may be lost by an unusual or unreasonable delay which is not satisfactorily explained or accounted for. Petrie v. Bell, 2 Bush, 58; Gossom v. Donaldson, 18 B. Mon., 230, 68 Am. Dec., 723; Hawes v. Orr, 10 Bush, 431; Wallace v. Marquett, 88 Ky., 130.

If, on the other hand, a judgment or decree is entered directing a sale of property, such a judgment or decree is binding upon parties who may thereafter purchase from either of the parties to the suit, and no transfer made by either after the judgment or decree has been pronounced can prevent the enforcement thereof. Jackson v. Warren, 32 Ill., 331; McCauley v. Rogers, 104 Ill., 578; Pitman v. Wakefield, 90 Ky., 171; Biddle v. Tomlinson, 115 Pa. St., 299. In the case before us the defendant, Roberts, purchased from Little after it was finally adjudged that Little had no title to the land. After the sale under that judgment Little filed exceptions to the sale and objected to its confirmation. For a number of years he continued to fight the suit by filing amended and substituted petitions, and by renewing his exceptions to the report of sale. While Roberts was not a party to the action, his vendor, Little, was

and the latter continued to defend the action through a long period of time. Roberts' purchase from Little was subject to any orders that might thereafter be entered by the court. If there was fraud in the judgment of 1891, or in the subsequent proceedings Little should have brought this to the attention of the court within a reasonable time after the alleged fraud was committed. Little would not be permitted to fight the case and make every possible defense for a period of nearly twenty years, without raising the question of fraud, and then contend that all the proceedings were obtained by fraud. That being true Roberts, his vendee, will not be permitted to make a defense in this action which Little, his vendor, should have made in the action adjudging that he had no title to the land.

There are but two phases of the question that remain to be discussed. Manifestly, if Little, under whom Roberts claims, had remained in possession of the land during the long pendency of the action of Cardwell v. Smith, &c., he could not have relied upon the statute of limitations. Whether or not Roberts may rely upon the statute of limitations depends upon whether or not the suit was prosecuted with due diligence after the judgment of 1891. Roberts cannot rely upon the adverse possession of Little, because Little's possession was not adverse. If, however, considering the circumstances of the case, there was an unreasonable delay in the prosecution of the suit, then Roberts, who acquired the title in 1894, and entered into possession of the land, may rely upon the statute of limitations and defeat plaintiff's recovery. In the case of Petrie v. Bell, 2 Bush, 58, it was held that an unexplained delay of two years was sufficient to defeat the benefit of a *lis pendens*. In the case referred to the sale was made in 1891, while the commissioner's report of sale was filed in July, 1894. Thereafter there were numerous delays. Defendant, Roberts, alleges laches in the prosecution of the suit. We are unable to say from the record as now before us whether there was laches in the prosecution of that suit or not. It appears that the papers were lost. The delay may have been caused by the loss of the papers. It is sufficient to say that the rejoinder makes out a *prima facie* case of laches, and on this account we withhold any opinion until the facts and circumstances are all before us. If there was laches in the prosecution of that suit, and defendant was in the

adverse possession of the land for a period of fifteen years prior to being dispossessed, then he is entitled to recover upon this ground and no other. For these reasons the demurrer to the rejoinder should have been overruled.

Judgment reversed and cause remanded for proceedings consistent with this opinion.