RENDERED: FEBRUARY 24, 2022
TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0228-I

ANDY BESHEAR, IN HIS OFFICIAL                                        APPELLANTS
CAPACITY AS GOVERNOR OF THE
COMMONWEALTH OF KENTUCKY;
ERIC FRIEDLANDER, IN HIS
OFFICIAL CAPACITY AS SECRETARY
OF THE CABINET FOR HEALTH AND
FAMILY SERVICES; AND STEVEN
STACK, IN HIS OFFICIAL CAPACITY
AS COMMISSIONER OF THE
KENTUCKY DEPARTMENT FOR
PUBLIC HEALTH


|                  | ON REVIEW FROM COURT OF APPEALS |
| V.               | NO. 2021-CA-0702                |
|                  | BOONE CIRCUIT COURT NO. 20-CI-00678 |


RIDGEWAY PROPERTIES, LLC D/B/A                                       APPELLEES
BEANS CAFE & BAKERY AND
COMMONWEALTH OF KENTUCKY EX
REL. DANIEL CAMERON IN HIS
OFFICIAL CAPACITY AS ATTORNEY
GENERAL


**OPINION OF THE COURT BY JUSTICE HUGHES**

**<u>REVERSING AND REMANDING</u>**

A plaintiff with standing is essential to a court's exercise of jurisdiction. Without a party with an actual or imminent injury caused by a defendant and redressable by the court, the "justiciable cause" required by Section 112(5) of the Kentucky Constitution does not exist. Despite the allegations in Plaintiff

Ridgeway Properties, LLC d/b/a Beans Café & Bakery (Beans)'s Third Amended Complaint filed March 11, 2021, Beans has no injury, actual or imminent, caused by Defendants Governor Andy Beshear, Secretary of the Cabinet for Health and Family Services Eric Friedlander or Commissioner of the Kentucky Department for Public Health Steven Stack (collectively "the Governor"). In its June 15, 2021 Amended Judgment and Order (Amended Judgment), the Boone Circuit Court glossed over the issue of standing, simply stating "Plaintiff presented evidence of the injury it is suffering" but the limited evidence referred to all predates the passage of the 2021 COVID-19 Legislation by the Kentucky General Assembly—the focus of the Third Amended Complaint. The injuries Beans' owner testified to at an injunction hearing were the result of executive branch actions taken in 2020 pursuant to executive orders and emergency regulations, all of which were found constitutional by this Court in a unanimous opinion fifteen months ago, *Beshear v. Acree*, 615 S.W.3d 780 (Ky. 2020). The Boone Circuit Court implicitly recognized the staleness of that proof and the tenuous nature of the injury when it stated that Beans' owner "testified that he fears enforcement actions may still be brought against him even though as yet, that has not occurred following the passage of the Acts." In fact, Beans has operated under its own COVID-19 plan, choosing to comply with the Centers for Disease Control and Prevention (CDC) guidance as allowed by 2021 House Bill (H.B.) 1, without any actual or hinted interference from the Governor or any member of the executive branch. Without any concrete actual or imminent injury on the part of Beans, the Boone Circuit Court had no

2

jurisdiction to grant "relief" by opining on the constitutionality of the 2021 COVID-19 Legislation and enjoining the Governor from interfering with Beans' business operations. More importantly, that court had no authority to use Beans' Third Amended Complaint as a stalking horse for issuing a statewide injunction.[1] To understand how this all happened, some discussion of the evolution of the case is necessary.

**RELEVANT FACTS AND PROCEDURAL BACKGROUND**

Boone Circuit Court Action 20-CI-678, from which this appeal emanates, began on June 16, 2020 when the Florence Speedway, Inc., filed suit against the Northern Kentucky Independent Health District (NKIHD) seeking declaratory and injunctive relief as to various executive branch COVID-19 orders and regulations. An amended class action complaint shortly thereafter added Beans and Little Links Learning, LLC (Little Links) as Plaintiffs and Governor Beshear, Secretary Friedlander and Commissioner Stack as Defendants. The Boone Circuit Court allowed the Attorney General to intervene as a Plaintiff on June 30, 2020 and held a hearing on the Plaintiffs' motion for a restraining order the next day. The court's July 2, 2020 injunction order granted relief to the Florence Speedway and Little Links but, notably, not Beans. Following an evidentiary hearing on July 16, 2020, the Boone Circuit Court issued a July 20, 2020 order that would have granted Florence Speedway, Little Links and the Attorney General a temporary

---

[1] As explained below, the Attorney General's presence as an Intervening Plaintiff does not remedy this jurisdictional defect.

3

injunction against the enforcement of the Governor's COVID-19 orders but for this Court's July 17, 2020 stay order.[2] When the matter came before this Court via a writ, *Beshear v. Acree*, we reversed the Boone Circuit Court's order and the matter was "remanded to that court for further proceedings, if any, consistent with this Opinion." 615 S.W.3d at 830. So that is where the matter stood as of November 12, 2020.

In its 2021 regular session, the Kentucky General Assembly passed three bills pertinent to our discussion, all of which amended the Governor's emergency powers under Kentucky Revised Statute (KRS) Chapter 39A. The most pertinent, H.B. 1, provided in part that a business could operate during the then-current state of emergency pursuant to an operating plan that "[m]eets or exceeds all guidance issued by the Centers for Disease Control and Prevention or by the executive branch, whichever is least restrictive." Senate Bill (S.B.) 1 limited the effect of any of the Governor's executive orders, regulations or directives imposing restrictions on in-person meetings or private businesses to "thirty (30) days unless an extension, modification, or termination is approved by the General Assembly." S.B. 2 directed the Cabinet for Health and Family Services to promulgate any regulations regarding infectious or contagious diseases pursuant to KRS Chapter 13A and provided

---

[2] Pursuant to its authority under Section 110 of the Kentucky Constitution, on July 17, 2020 the Kentucky Supreme Court issued an order staying all orders of injunctive relief issued by lower courts in COVID-19 litigation pending further action of the Supreme Court. This Court expressly noted the need for a clear and consistent statewide public health policy in the midst of the COVID-19 pandemic.

that the regulations are in effect "no longer than thirty (30) days" if they place restrictions on in-person gatherings or private businesses. All three bills (the 2021 Legislation or the New Legislation) contained an emergency clause, were vetoed by the Governor and became effective February 2, 2021 when those vetoes were overridden by the General Assembly.

As the Boone Circuit Court subsequently found, once the 2021 Legislation became effective Beans "opted to develop a compliance plan based upon CDC guidance in lieu of the Governor's mandates." Although neither the Governor nor any member of the executive branch sought to interfere with Beans' decision and its business operations pursuant to that plan, Beans used Action No. 20-CI-678[3] to press its continued disagreement with the Governor's COVID-19 measures, advocating the constitutionality of the 2021 Legislation and seeking to enjoin the Governor from any action to the contrary. Beans' Third Amended Complaint filed on March 11, 2021 once again sought injunctive and declaratory relief. Following a May 17, 2021 evidentiary hearing the Boone Circuit Court granted relief, first entering a June 8 order granting relief to the named Plaintiff and then, upon request, issuing the June 15, 2021 Amended Judgment that is before us on this appeal. The Amended Judgment declares the constitutionality of the 2021 COVID-19 Legislation, holds any orders to the contrary imposed by the Governor unconstitutional and prohibits

---

[3] Following the November 2020 remand, Florence Speedway and Little Links essentially withdrew from the case. They had no role in the Third Amended Complaint or subsequent proceedings.

the three named Defendants from enforcing any emergency order, decree or regulation in conflict with the 2021 Legislation "against any person within this Commonwealth."

The Governor appealed to the Court of Appeals, which recommended transfer to this Court on June 21, 2021. Shortly thereafter, on July 8, the Court of Appeals denied the Governor's requested Kentucky Rule of Civil Procedure (CR) 65.08 relief. On July 20, 2021, we accepted transfer of the Boone Circuit Court case and set an expedited briefing schedule with simultaneous initial briefs due August 11 and response briefs on September 1, 2021. No oral argument was scheduled.

Before turning to analysis of this case and the essential issue of standing, another civil action filed on the effective date of the 2021 Legislation bears mention. On February 2, 2021, Governor Beshear and Secretary Friedlander filed suit in Franklin Circuit Court against Speaker of the House David Osborne, Senate President Robert Stivers, the Legislative Research Commission, and Attorney General Daniel Cameron seeking a declaration that the 2021 Legislation was unconstitutional. The Franklin Circuit Court issued a temporary injunction on March 3, amended on April 7, 2021, which essentially left all of the Governor's executive orders and administrative regulations in place pending final judgment by that court. Following a CR 65.07 motion for emergency relief filed in the Court of Appeals, we accepted transfer of the Franklin Circuit Court case, ordered briefing and heard oral arguments in that case, *Cameron v. Beshear,* and a second COVID-19 case

6

from Scott Circuit Court, *Beshear v. Goodwood Brewing Co., LLC*, on June 10, 2021. Our opinions in those cases were issued on August 21, 2021. *Cameron v. Beshear*, 628 S.W.3d 61 (Ky. 2021); *Beshear v. Goodwood Brewing Co., LLC*, 635 S.W.3d 788 (Ky. 2021).

## ANALYSIS

Section 112(5) of the Kentucky Constitution provides in pertinent part: "The Circuit Court shall have original jurisdiction of all justiciable causes not vested in some other court." As we explained in *Commonwealth Cabinet for Health & Family Services Department for Medicaid Services v. Sexton ex rel. Appalachian Regional Healthcare, Inc.,* 566 S.W.3d 185 (Ky. 2018) (*Sexton*) and reiterated in *Cameron v. Beshear*, constitutional standing—standing sufficient to support a justiciable cause—has three elements (1) injury, (2) causation, and (3) redressability.

> A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief. A litigant must demonstrate that it has suffered a concrete and particularized injury that is either actual or imminent . . . . The injury must be . . . distinct and palpable, and not abstract or conjectural or hypothetical. The injury must be fairly traceable to the challenged action, and relief from the injury must be likely to follow from a favorable decision.

*Id*. at 196 (internal quotations, citations and alteration omitted). Where "the plaintiff does not have the requisite standing to sue, then the circuit court *cannot* hear the case." *Id.* Additionally, this Court cannot adjudicate a case on appeal that a circuit court cannot adjudicate "because the exercise of appellate

7

jurisdiction *necessarily assumes* that proper original jurisdiction has been established first." *Id.*

With the Third Amended Complaint, Beans initiated a second phase of this COVID-19 litigation, a phase focused solely on the aftermath of the 2021 Legislative session where the New Legislation was passed. As noted, that Legislation became effective on February 2, 2021, over a month before the Third Amended Complaint was filed. From the filing of that complaint through the May 17, 2021 evidentiary hearing, the Governor took no action whatsoever to interfere with Beans' decision to operate its business pursuant to its own plan, one the Boone Circuit Court described as "a compliance plan based upon CDC guidance." The circuit court made no specific finding as to Beans' standing to pursue the new claims in its most recent complaint, and the totality of its apparent conclusions was expressed in two paragraphs:

> Richard Hayhoe, owner of Beans Café & Bakery, testified that as a result of the capacity restrictions ordered by the Governor, he lost two-thirds of his restaurant's seating capacity. According to Hayhoe, the mandates have put his business in a precarious financial condition. Additionally, the Northern Kentucky Independent Health District cited Plaintiff for violating the Governor's mask mandate, for which Hayhoe was later criminally charged. Hayhoe testified that he was not afforded any opportunity to defend against the allegations. He said that, had he been able to, he would have explained that the person not wearing a mask had a health exemption.

> After passage of the New Legislation, Hayhoe's business opted to develop a compliance plan based upon CDC guidance in lieu of the Governor's mandates. The former, according to Hayhoe, are less restrictive. Hayhoe testified that he fears enforcement actions may still be brought against him even though as yet, that has not occurred following the passage of the Acts.

8

Trial Court's Amended Judgment and Order at 12-13 (June 15, 2021) (internal citation to video record omitted).

As the Governor aptly notes, the testimony about seating capacity restrictions and mask mandates relates to events that predated the 2021 Legislation, events that occurred during 2020, before and immediately after this Court's *Beshear v. Acree* decision upholding the Governor's authority to issue the challenged executive orders and regulations. In the circuit court's words, "the landscape . . . changed" after the adoption of the New Legislation and Beans filed the Third Amended Complaint in that new legal landscape to assert the constitutionality of the legislation. To sustain standing **after February 2, 2021**, the effective date of that New Legislation, Beans had to have a "concrete and particularized injury that [was] either actual or imminent." *Sexton*, 566 S.W.3d at 196. Beans plainly had no such actual or imminent injury post-February 2, 2021 and the Boone Circuit Court never found one because Beans experienced no interference whatsoever with its choice to develop a CDC-compliant plan and operate accordingly. So no actual injury occurred.

To the extent Beans alleged a "fear" of enforcement, that speculative concern is not legally sufficient. "It is well-settled that '[a]llegations of possible future injury do not satisfy the requirements of [standing].' 'A threatened injury must be 'certainly impending' to constitute injury in fact.'" *Commonwealth v. Bredhold*, 599 S.W.3d 409, 417 (Ky. 2020) (internal citations omitted). Without a doubt, no injury was certainly impending against Beans.

9

Not only does the record contain no evidence of impending action by the Governor or any member of the executive branch, the record is all to the contrary. On May 14, 2021, **three days before** the Boone Circuit Court conducted the evidentiary hearing in this case, the Governor announced the upcoming lifting of the restrictions on restaurants about which Beans complained (and with which he was not complying or being asked to comply after the New Legislation). Despite this clear signal, the circuit court proceeded and entered its initial Judgment effective at 5:00 p.m. on June 10, 2021, seven hours before the June 11 date on which all restrictions were in fact lifted. Even more perplexing, the Boone Circuit Court proceeded to amend its Judgment, finally entering the Amended Judgment on June 15, 2021, when **no** restrictions remained. Beans' "fear" was legally insufficient to establish standing from the beginning, but any hint or whiff of potential injury disappeared altogether even before evidence could be heard much less an order entered.[4]

Where "the plaintiff does not have the requisite standing to sue, then the circuit court *cannot* hear the case." *Sexton,* 566 S.W.3d at 196. Here despite Beans' best efforts, it had no actual or imminent "concrete and particularized"

---

[4] Aside from the lifting of the relevant restrictions, the Governor's decision to file suit immediately on February 2, 2021, in Franklin Circuit Court reflected a consistent position that, while he questioned the constitutionality of the New Legislation, he recognized that issue had to be decided by the courts, ultimately the Kentucky Supreme Court. This fact also undercuts any possible suggestion of an imminent injury to Beans.

injury, *id.,* to establish its standing, and the circuit court should have recognized as much and dismissed accordingly.

The Attorney General's presence in Action 20-CI-678 does nothing to fill the void. The Attorney General was allowed the status of Intervening Plaintiff in the first phase of the case by an order entered July 2, 2020. Notably, Florence Speedway, Little Links and Beans had actual standing in that first phase because all were operating under restrictions from the Governor's COVID-19 executive orders and emergency regulations, mandates which they deemed unconstitutional and destructive to their businesses. The Attorney General was allowed to intervene to join in the three businesses' attacks on the constitutionality of the Governor's various COVID-19 related orders and regulations and that controversy ended with our decision in *Beshear v. Acree*, 615 S.W.3d at 780. In that first phase, the Boone Circuit Court was unquestionably presented with a justiciable cause, but that case concluded, and the Third Amended Complaint presented a new, different phase of pandemic litigation.

The Governor maintains that the Attorney General's July 2020 intervention does not continue to apply to the Third Amended Complaint, an entirely new set of claims based on the New Legislation and, moreover, by participating in the second phase of the case the Attorney General is simply collaterally attacking the Franklin Circuit Court order in *Cameron v. Beshear.* We need not address either of those specific arguments because in the end our

11

"concurrent jurisdiction" doctrine precludes the Attorney General from having a "justiciable cause" to present to the Boone Circuit Court.

The "concurrent jurisdiction," or more aptly "exclusive concurrent jurisdiction," doctrine essentially prevents the same parties from litigating the same issues in two courts by giving priority to the court that first properly acquired jurisdiction over the parties and their dispute. In *Akers v. Stephenson*, 469 S.W.2d 704, 705 (Ky. 1970), the Commonwealth's highest Court addressed a writ sought against a Floyd Circuit Court judge who had presided over a case regarding the construction of a new high school in Floyd County. After Floyd Circuit Court ruled against the petitioners, allowing the construction to proceed, they filed a second suit on the same issues in Franklin Circuit Court. *Id.* When the Floyd Circuit Court entered an order purporting to control the petitioners' ability to pursue that second suit, they sought a writ to prohibit the Floyd Circuit judge from interfering with the case they had filed in Franklin Circuit Court. *Id.* at 706. In denying the writ, the Court of Appeals stated:

> There appears no question but that petitioners are representatives of the same class involved in the original suit over which respondent had jurisdiction. It is also apparent that, though a different type of question is raised, the subject matter of the two pending suits is essentially the same. **It is a well settled rule that where the parties and the subject matter are the same, once a court of concurrent jurisdiction has begun the exercise of that jurisdiction over a case, its authority to deal with the action is exclusive and no other court of concurrent jurisdiction may interfere with the pending proceedings.** 20 Am. Jur. 2d, Courts, s 128, page 481. In *Delaney v. Alcorn*, 301 Ky. 802, 193 S.W.2d 404 (1946), we held the court first obtaining jurisdiction of the divorce proceeding could not only enjoin the

12

> defendant from proceeding in another jurisdiction but could also enjoin the sheriff of the latter jurisdiction from executing any writs issued by the latter court. See also *Hawes v. Orr*, 73 Ky. (10 Bush) 431 (1874).

*Id.* (emphasis added). The Court of Appeals recognized that Floyd Circuit Court, having first acquired jurisdiction, had the exclusive authority to decide the parties' dispute and thus did not act erroneously in directing the petitioners to dismiss their Franklin Circuit Court action.[5] *Id.*

The exclusive concurrent jurisdiction doctrine is not unique to Kentucky. *See, e.g., State ex rel. Judson v. Spahr,* 515 N.E.2d 911, 913 (Ohio 1987) ("As between courts of concurrent jurisdiction, the tribunal whose power is first invoked by the institution of proper proceedings acquires jurisdiction, to the exclusion of all other tribunals . . . ."); *People ex rel. Garamendi v. Am. Autoplan, Inc.,* 25 Cal. Rptr. 2d 192 (Cal. Ct. App. 1993) (rule of exclusive concurrent jurisdiction provides that where two superior courts have concurrent jurisdiction over the subject matter and parties, the first to assume has exclusive and continuing jurisdiction). *See also Texas Liquor Control Bd. v. Canyon Creek Land Corp.,* 456 S.W.2d 891, 895 (Tex. 1970) ("As a general rule, an action for declaratory judgment will not be entertained if there is pending, at the time it is filed, another action or proceeding between the same parties and in which may be adjudicated the issues involved in the declaratory action."). The exclusive concurrent jurisdiction doctrine avoids contradictory decisions

---

[5] We note that the *Akers* Court, without further discussion, referred to the second Franklin Circuit Court action as a "collateral attack." 469 S.W.2d at 706.

13

regarding the same controversy and the drain on judicial resources posed by a multiplicity of suits. *Garamendi,* 25 Cal. Rptr. 2d at 197.

Turning to this matter, the first circuit court to acquire jurisdiction over the dispute between the Attorney General and the Governor regarding the constitutionality of the New Legislation was the Franklin Circuit Court on February 2, 2021. The Third Amended Complaint filed by Beans on March 11, 2021 raised the same constitutionality issues (even though as noted above Beans had no standing) and to the extent the Attorney General's Intervening Plaintiff status still existed it was for purposes of those claims raised in that Third Amended Complaint. As between the two circuit courts, Franklin Circuit Court plainly was the first to acquire jurisdiction of the dispute between the Attorney General and Governor over the New Legislation and thus had the authority to decide the issues. Simply put, the Attorney General could not fill the void in Boone Circuit Court's jurisdiction created by Beans' lack of standing because the Attorney General's justiciable cause against the Governor regarding the New Legislation was already pending in Franklin Circuit Court.

We are aware, of course, that the Attorney General is the Commonwealth's "chief law officer," *Beshear v. Bevin,* 498 S.W.3d 355, 366 (Ky. 2016), and is "entitled to be heard" whenever the constitutionality of a statute is at issue.[6] KRS 418.075. *See also* CR 24.03 (requiring notification of

---

[6] We note that KRS 418.075(1) gives the Attorney General the right "to be heard" but does not direct that he or she be allowed to participate as a party to the action.

14

the Attorney General when "constitutionality of an act of the General Assembly affecting the public interest is drawn into question"). Despite the Attorney General's inability to participate as an Intervening Plaintiff given he was litigating the same issues against the same Defendants in another court, he could still "be heard" in the Boone Circuit Court as to his position on the constitutionality of the 2021 Legislation. As we read KRS 418.075, the Attorney General was entitled to file a document with that court setting forth his analysis of the constitutional issues raised, either a legal memorandum or even copies of the documents he had filed on those issues in Franklin Circuit Court. This right to be heard did not, however, equate with a justiciable cause in Boone Circuit Court nor did it undercut application of the exclusive concurrent jurisdiction doctrine, which applies to all litigants.

In closing, standing is not an abstract concept to be glossed over but rather a fundamental element of a justiciable cause, the prerequisite for a Kentucky circuit court exercising jurisdiction. Ky. Const. § 112(5). As to the Third Amended Complaint, Beans plainly had no standing and consequently the Boone Circuit Court had no jurisdiction. Furthermore, even if the Attorney General's status as an Intervening Plaintiff in 2020 still existed, his participation in the first-filed Franklin Circuit Court action that culminated in *Cameron v. Beshear* precluded him from presenting a justiciable cause in his own right. With both Beans and the Attorney General lacking a justiciable cause, the Boone Circuit Court had no jurisdiction and should have dismissed the case.

15

For the foregoing reasons, we reverse the Boone Circuit Court and remand this matter for dismissal of the action in its entirety.

All sitting. All concur. Minton, C.J., also concurs by separate opinion, in which Keller and VanMeter, JJ., join.

MINTON, C.J., CONCURRING: I fully concur with the majority opinion but write separately to offer guidance on the application of the exclusive concurrent jurisdiction rule and to emphasize the limited application of that rule in this case.

While there is a paucity of Kentucky case law applying the exclusive concurrent jurisdiction rule, other courts have discussed similar doctrines in detail. The Sixth Circuit Court of Appeals, for example, has described its "first-to-file" rule—the equivalent of the exclusive concurrent jurisdiction rule among federal district courts—as a "prudential doctrine that grows out of the need to manage overlapping litigation across multiple districts."[7] Under that rule, "when actions involving nearly identical parties and issues have been filed in two different district courts, 'the court in which the first suit was filed should *generally* proceed to judgment.'"[8] Courts in the Sixth Circuit generally evaluate three factors when determining how to apply the first-to-file rule: "(1) the

---

[7] *Baatz v. Columbia Gas Transmission, LLC,* 814 F.3d 785, 789 (6th Cir. 2016).

[8] *Id.*

16

chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake."[9]

However, the Sixth Circuit's first-to-file doctrine simply provides district courts the discretionary authority to dismiss a case[10]—it does not mandate dismissal or require that the district court stay a duplicative matter because it lacks jurisdiction. But our doctrine, as described in *Akers*, provides that the first court to acquire jurisdiction over a particular matter does so to the *exclusion* of all other courts of equal rank.[11] And the cases cited by the majority show that other courts also construe their exclusive concurrent jurisdiction doctrines as conferring exclusive jurisdiction to the court that first acquired jurisdiction over a particular matter.[12]

This case does not present the opportunity to define the parameters of the exclusive concurrent jurisdiction rule or the criteria under which a circuit court should determine whether that rule applies. Instead, the application of

---

[9] *Id.* Applying precedent from the Ninth Circuit Court of Appeals, the Supreme Court of Nevada recently adopted a similar test for determining whether the first-to-file rule applies. *See Mesi v. Mesi*, 478 P.3d 366, 370–71 (Nev. 2020).

[10] The Sixth Circuit's first-to-file doctrine also provides district courts with "discretion to stay the suit before it, to allow both suits to proceed, or in some circumstances, to enjoin the parties from proceeding in the other suit." *Smith v. S.E.C.*, 129 F.3d 356, 361 (6th Cir. 1997).

[11] *Akers v. Stephenson*, 469 S.W.2d 704, 706 (Ky. 1970) ("[W]here the parties and the subject matter are the same, once a court of concurrent jurisdiction has begun the exercise of that jurisdiction over a case, its authority to deal with the action is *exclusive . . . .*" (emphasis added)).

[12] *See, e.g., State ex rel. Judson v. Spahr*, 515 N.E.2d 911, 913 (Ohio 1987); *People ex rel. Garamendi v. Am. Autoplan, Inc.*, 25 Cal. Rptr. 2d 192, 197–98 (Cal. Ct. App. 1993); and *Texas Liquor Control Bd. v. Canyon Creek Land Corp.*, 456 S.W.2d 891, 895 (Tex. 1970).

17

the doctrine in this case is unique and limited: because the Attorney General and the Governor were litigating the constitutionality of the 2021 Legislation in Franklin Circuit Court at the time Beans filed its Third Amended Complaint in Boone Circuit Court, the Attorney General's participation in the Boone Circuit Court action to defend the constitutionality of the 2021 Legislation could not independently supply the Boone Circuit Court with a justiciable controversy when Beans's claims lacked an injury in fact. Because the Franklin Circuit Court had acquired exclusive jurisdiction over that controversy and that matter remained pending, the Boone Circuit Court could not have proceeded to judgment.

Keller and VanMeter, JJ., join.

COUNSEL FOR APPELLANTS:

Amy Denise Cubbage
Kentucky Public Service Commission

Wesley Warden Duke
Kentucky Cabinet for Health and Family Services
Office of Legal Services

Steve Travis Mayo
Chief Deputy General Counsel

Marc Griffin Farris
David Thomas Lovely
Taylor Allen Payne
Laura Crittenden Tipton
Deputy General Counsel
Office of the Governor

COUNSEL FOR APPELLEE, RIDGEWAY
PROPERTIES, LLC D/B/A BEANS CAFÉ
& BAKERY:

Thomas Bearnard Bruns
Bruns Connell Vollmar & Arms, LLC

Zachary Gottesman
Gottesman & Associates

Christopher David Wiest

COUNSEL FOR APPELLEE,
COMMONWEALTH OF KENTUCKY
EX REL. DANIEL CAMERON IN HIS
CAPACITY OF ATTORNEY GENERAL:

Heather Lynn Becker
Brian Lee Dunn
Matthew Franklin Kuhn
Marc Edwin Manley
Stephen Chad Meredith
Brett Robert Nolan
Aaron John Silletto
Assistant Attorneys General
Office of the Attorney General