OPINION OF THE COURT BY CHIEF JUSTICE MINTON
*188 This case requires us to consider whether the courts of Kentucky can undertake a statutorily created judicial review of an administrative agency's final order when the person appealing that final order does not have a concrete injury. Our resolution requires us to apply the doctrine of constitutional standing, and, in doing so, we hold as a matter of first impression that the existence of a plaintiff's standing is a constitutional requirement to prosecute any action in the courts of this Commonwealth, adopting the United States Supreme Court's test for standing as espoused in Lujan v. Defenders of Wildlife .[1] Because this case reaches us via an interlocutory appeal from the circuit court's review of an agency ruling, we further hold that all of Kentucky's courts have the responsibility to ascertain, upon the court's own motion if the issue is not raised by a party opponent, whether a plaintiff has constitutional standing, an issue not waivable, to pursue the case in court. Under that test, we conclude that Medicaid beneficiary Lettie Sexton, the putative petitioner in the present case, does not have the requisite constitutional standing to pursue her case in the courts of the Commonwealth. So, we reverse the decision of the Court of Appeals, vacate the ruling of the circuit court, and remand this case to the circuit court with instructions to dismiss the case.
I. BACKGROUND.
Lettie Sexton, a Medicaid beneficiary, was admitted to Appalachian Regional Healthcare ("ARH"), complaining of chest pain. ARH sent a request for preauthorization of medical services to Coventry Health and Life Insurance, d/b/a Coventry Cares, Inc. ("Coventry"), a managed-care organization that had contracted with the Kentucky Cabinet for Health and Human Services ("Cabinet") to provide reimbursement to hospitals for certain services provided to Medicaid beneficiaries. Coventry approved a 23-hour observation stay at ARH. Sexton, through ARH, her designated representative for any disputed claims, requested that the observation stay at ARH be extended 15 more hours for a cardiology consultation. Coventry denied reimbursement for this request. Sexton was eventually hospitalized at ARH for approximately 38 hours.
ARH then requested an internal review by Coventry of its denial of reimbursement for the 15 hours of additional hospitalization. After review, Coventry upheld its denial.
*189 ARH, ostensibly acting for Sexton, then requested a Medicaid Fair Hearing to challenge Coventry's denial. A hearing officer for the administrative-services branch of the Cabinet conducted that hearing and ruled that Sexton lacked standing to pursue an appeal of Coventry's denial of reimbursement to ARH because Sexton herself had no stake in the outcome of the dispute between ARH and Coventry. The hearing officer's ruling was based upon the fact that because Medicaid had paid ARH for the services rendered to Sexton, she would owe nothing at all to ARH for the extended hospital stay.[2] In due course, the Cabinet Secretary adopted the hearing officer's recommendation as the Cabinet's final order.
ARH, acting as Sexton's representative, then sought judicial review under Kentucky Revised Statute (KRS) 13B.140 of the Cabinet's final order by timely filing a petition for review in the Harlan Circuit Court. The Cabinet filed a motion to dismiss the petition, alleging that: (1) Sexton lacked standing; (2) ARH was not Sexton's authorized representative; (3) venue did not lie in Harlan County; and (4) that the petition was barred by the doctrine of sovereign immunity because it did not strictly comply with the requirements of KRS 13B.140. Coventry joined in the Cabinet's motion on the same grounds.
Following a hearing, the circuit court denied the motion to dismiss. On the issue of standing, the circuit court found that the individual ARH employees who had been authorized by Sexton to represent her interests were sufficiently identified in the exhibits to the petition to provide standing and to comply substantially with the requirements of KRS 13B.140. As for venue and subject-matter jurisdiction, the circuit court ruled that the addresses for Sexton's designated representatives were the address of the ARH hospital employees located in Harlan County, thus fixing venue there in accordance with KRS 13B.140. On the issue of sovereign immunity, the circuit court determined that this argument was based upon the proposition that a failure strictly to comply with KRS 13B.140 eliminated waiver of sovereign immunity. But since the circuit court found the petition to be otherwise sufficient, the limited waiver of immunity was not eliminated. So, the circuit court denied Coventry's and the Cabinet's motions to dismiss the petition.
Because the circuit court denied the Cabinet and Coventry's sovereign-immunity argument, they each filed an interlocutory appeal in the Court of Appeals. ARH initially sought a dismissal of the appeal, claiming that the circuit court's order was not final and appealable.
On ARH's motion to dismiss the appeal, the Court of Appeals found that the circuit court's rulings on sovereign immunity were immediately appealable, and therefore denied ARH's motion to dismiss the appeal. The Court of Appeals also found that there was no requirement that KRS 13B.140 be strictly followed for the waiver of sovereign immunity to apply. But the Court of Appeals also found that in Medicaid reimbursement cases like this one, sovereign immunity has been waived by the overwhelming implication of statutory language, including KRS 45A.235.[3] Additionally, the Court of Appeals found that the statutes governing the state Medicaid program, KRS 205.510 -645, indicate that sovereign immunity had been waived.
*190 Finally, the Court of Appeals found that venue, as provided in the Kentucky Model Procurement Code, specifically KRS 45A.245, mandated that an aggrieved person, firm, or corporation who has a valid written contract must bring an enforcement action in Franklin Circuit Court. Because the petition was filed in Harlan Circuit Court, the Court of Appeals held that the circuit court's ruling denying the motion to dismiss based on improper venue should be vacated and directed that the parties may make a motion to transfer the case to Franklin Circuit Court or file a new petition for review in Franklin Circuit Court.
Both parties then filed discretionary-review petitions, which we granted.
II. ANALYSIS.
A. Reviewability of the Issues.
From the outset of our analysis, it is important to note that this case is before us at this juncture as an interlocutory appeal because of the lower courts' rulings on the sovereign immunity issue. And we recently held in Baker v. Fields "that the scope of appellate review of an interlocutory appeal of the trial court's determination of the application of qualified official immunity is limited to the specific issue of whether the immunity was properly denied and nothing more."[4] Although the case before us today involves a circuit court's ruling on an issue of sovereign-immunity, not qualified official immunity, the principle is the same-the scope of appellate review of an interlocutory appeal of the trial court's determination of the application of sovereign immunity is limited to that issue and nothing more.
Such a rule grounds itself in this Court's analysis of issues that can and cannot be decided via interlocutory appeal in Breathitt County Bd. of Educ. v. Prater.[5] At the risk of simply restating our analysis in that case and in Baker v. Fields, we simply note that interlocutory appeals are a vehicle to be used rarely, only to decide a few, enumerated issues.
Admittedly, the question of whether the issue of standing can be reached on an interlocutory appeal has never been before this Court. But a nationwide review of relevant case law reveals a trend that parties, themselves, may not raise the issue of standing by interlocutory appeal.[6] Most consistently, federal appellate courts hold "that a district court's denial of a motion to dismiss on justiciability grounds is not immediately appealable under the collateral-order doctrine."[7] "Under the 'collateral order doctrine,' also called the ' Cohen[8] doctrine,' a limited set of district *191 court orders are reviewable though short of final judgment."[9] And in Breathitt County, we aligned Kentucky's stance on interlocutory appeals with that of federal law's collateral-order doctrine.[10]
The rare use of interlocutory appeals in Kentucky, the absence of legal precedent in Kentucky allowing an interlocutory appeal of a trial court's ruling on the issue of standing, the uniform federal legal precedent prohibiting an interlocutory appeal on the issue of standing, this Court's "compelling interest in maintaining an orderly appellate process,"[11] and the general rule that a nonfinal order cannot be immediately appealed, all converge to satisfy us of the value of a rule that prohibits an interlocutory appeal of a trial court's decision regarding the plaintiff's standing to sue.
Therefore, we hold that a trial court's ruling on the issue of constitutional standing, in and of itself, does not give rise to an immediate right to an appeal, i.e. an interlocutory appeal. But such prohibition against interlocutory appeal on solely the issue of standing should not constrain the power of the appellate court, at the instance of a party-opponent or acting upon on its own motion, from inquiring into whether a plaintiff has the requisite standing to sue when an interlocutory appeal is properly before an appellate court on an issue recognized as immediately appealable.
In Harrison v. Leach, we held that an appellate court errs when it raises the issue of standing on its own motion because standing is a waivable defense.[12] But Harrison crafted this rule while analyzing the issue of statutory, not constitutional, standing.[13] To clarify the differences among the standing concepts, we find helpful this explanation offered by the U.S. Court of Appeals for the Third Circuit:
Though all are termed "standing," the differences between statutory, constitutional, and prudential standing are important. Constitutional and prudential standing are about, respectively, the constitutional power of a ... court to resolve a dispute and the wisdom of so doing. Statutory standing is simply statutory interpretation: the question it asks is whether [the legislature] has accorded this injured plaintiff the right to sue the defendant to redress his injury.[14]
Put differently, "The question whether a plaintiff can sue for violations of [a statute] is a matter of statutory standing, 'which is perhaps best understood as not even standing at all.' ... Dismissal for lack of statutory standing is properly viewed as dismissal ... for failure to state a claim [upon which relief may be granted]."[15]
In this case, by contrast, constitutional standing is at issue because Coventry and the Cabinet are not alleging that the federal or state Medicaid statutes and regulations do not afford Sexton relief, i.e. that these laws make no provision for Sexton to bring suit; rather, Coventry and the *192 Cabinet are alleging that Kentucky courts cannot hear this case because no justiciable cause -a constitutional predicate to maintaining a case in Kentucky courts -exists. We hold that all Kentucky courts have the constitutional duty to ascertain the issue of constitutional standing, acting on their own motion, to ensure that only justiciable causes proceed in court, because the issue of constitutional standing is not waivable.[16] Our holding conforms to the general understanding of constitutional standing as a predicate for a court to hear a case and the ability of a court, acting on its own motion, to address that issue.[17]
In this case, the procedurally proper interlocutory-appeal issue before this Court is whether the doctrine of sovereign immunity bars Sexton from suit. Our holding today is not an affirmation that sovereign immunity exists in this case to bar Sexton from suit-we do not reach the merits of that argument because Sexton lacks the constitutional standing necessary for us to reach any of the other potential issues in this case. A party need not be correct on the merits of its interlocutory appeal issue for an appellate court to raise the issue of constitutional standing. But a party must have a facially valid and procedurally proper interlocutory appeal for an appellate court to reach the issue of standing.[18] Because we have determined that this case is properly before this Court on interlocutory appeal, we now turn to the constitutional standing issue in this case.
B. The principle of constitutional standing in Kentucky .
An elementary principle of the federal and state governmental structure is the division of power among three branches of government: the legislature, the executive, and the judiciary.[19] The United *193 States Supreme Court has interpreted the United States Constitution as providing a "series of limits on the federal judicial power."[20] Identified as the "justiciability doctrines," these limits on the federal judicial power derive from Article III, Section 2, Clause 1 of the U.S. Constitution, which states, "The judicial Power shall extend to all Cases ... [and] Controversies ...."[21] A federal court cannot adjudicate a case that does not meet the requirements of the justiciability doctrines.
The U.S. Supreme Court has identified five major justiciability doctrines: (1) the prohibition against advisory opinions, (2) standing, (3) ripeness, (4) mootness, and (5) the political-question doctrine.[22] The Court has also distinguished between justiciability requirements that are "constitutional," meaning that Congress by statute cannot override them, and "prudential," meaning that they are based on prudent judicial administration and can be overridden by Congress since they are not constitutional requirements.[23] Of most concern in this case is the standing requirement and the constitutional limitations, if any, the standing requirement imposes.
"In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."[24] Federal constitutional standing has three requirements: the plaintiff must allege that 1) he or she has suffered or imminently will suffer an injury; 2) the injury is fairly traceable to the defendant's conduct; and 3) a favorable federal court decision is likely to redress the injury.[25] In addition to these federal constitutional requirements, two major federal prudential standing principles exist: (1) a party generally may assert only his or her own rights and cannot raise the claims of third parties not before the court, i.e. the prohibition against "third-party standing"; and (2) a plaintiff may not sue as a taxpayer who shares a grievance in common with all other taxpayers, i.e. the prohibition against "generalized grievances."[26]
To be clear, these standing requirements as outlined above are discussed in the context of application to the limit on federal judicial power, not state judicial power. Under principles of federalism, "[l]ong-established precedent holds that Article III standing requirements do not apply in state courts and courts of the territories."[27] So we now examine Kentucky's current standing doctrine.
A recently published law journal article *194 [28] aptly summarizes Kentucky's standing doctrine:
In Kentucky, standing is not a constitutional doctrine, but appears to be a self-imposed restraint based on a prohibition against generalized grievances as a "fundamental" principle of adjudication. Kentucky courts have offered limited explanation of their standing doctrine. The source of the doctrine appears to be a 1957 case challenging an alcohol board's decision to increase the number of licenses available.[29] There, [Kentucky's highest Court] held that "[i]t is fundamental that a person may attack a proceeding of this nature by independent suit only if he can show that his legal rights have been violated."[30] This was based on the principle that "[a] public wrong or neglect or breach of a public duty cannot be redressed in a suit in the name of an individual whose interest in the right asserted does not differ from that of the public generally, or who suffers injury only in common with the general public."[31]
Under the modern Kentucky test, "[t]o have standing to sue, one must have a judicially cognizable interest in the subject matter of the suit" that is not "remote and speculative," but "a present and substantial interest in the subject matter."[32] Kentucky courts have not adopted the Lujan test, but have adopted elements of federal decisions on associational standing, which have seen substantially more elaboration than general standing doctrine in the Kentucky courts.[33]
Kentucky courts have seemingly created a judicially-as opposed to constitutionally-imposed standing requirement. At the federal level, where standing is partly grounded in Article III, Section 2, Clause 1 of the U.S. Constitution, while "[the legislature] may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute,"[34] "[i]t is, of course, true that '[the legislature] may not confer jurisdiction on ... courts to render advisory opinions[.]' "[35] Federal law's constitutional standing requirement is a safeguard against the overreach of judicial, legislative, and executive power. To ascertain what, if any, constitutional standing requirements exist in Kentucky, we turn to the Kentucky Constitution first and foremost.
*195 Section 109 of the Kentucky Constitution states, "The judicial power of the Commonwealth shall be vested exclusively in one Court of Justice which shall be divided into a Supreme Court, a Court of Appeals, a trial court of general jurisdiction known as the Circuit Court and a trial court of limited jurisdiction known as the District Court." The Kentucky Constitution then goes on to outline the various levels of courts in Kentucky and their respective powers.
Most importantly, "The Circuit Court shall have original jurisdiction of all justiciable causes not vested in some other court. It shall have such appellate jurisdiction as may be provided by law."[36] "The Court of Appeals shall have appellate jurisdiction only ... " except in certain situations not relevant in this case.[37] "The Supreme Court shall have appellate jurisdiction only ..." except in certain situations not relevant to this case.[38] "The district court shall be a court of limited jurisdiction and shall exercise original jurisdiction as may be provided by the General Assembly."[39]
Notably, § 109 of the Kentucky Constitution, describing the judicial power in Kentucky, does not contain the same case or controversy language contained in Article III, Section 2, Clause 1 of the U.S. Constitution, nor does any other provision of the Kentucky Constitution discussing judicial power in the various levels of courts. This case or controversy language in the U.S. Constitution is the lynchpin for all justiciability doctrines, including standing. Most notably, however, § 112(5) of the Kentucky Constitution grants circuit courts original jurisdiction over all justiciable causes not vested in some other court.
The standing doctrine is said to have its origins in the U.S. Supreme Court case of Fairchild v. Hughes, a decision written by Justice Brandeis and rendered in 1922.[40] The U.S. Supreme Court later expounded on the doctrine: If a party does not have the requisite standing to bring suit, the case is said to be nonjusticiable ; if a party does have the requisite standing to bring suit, the case is said to be justiciable.[41] The first appearance of the justiciable causes phrase in § 112 (5) appears in the 1974 Amendments to the Kentucky Constitution. By limiting the circuit court's jurisdiction to adjudicating justiciable causes only, § 112 (5) appears to have adopted some notion of the justiciability doctrines articulated by the U.S. Supreme Court.
We have recognized the justiciable causes phrase as a constitutional limitation on Kentucky courts' judicial power before; " 'Standing,' of course, in its most basic sense, refers to an integral component of the 'justiciable cause ' requirement [in Ky. Const. § 112 (5) ] underlying the trial court's jurisdiction."[42] Lawson also provided *196 a potential constitutional test for Kentucky courts to examine standing: "To invoke the court's jurisdiction, the plaintiff must allege [1] an injury [2] caused by the defendant [3] of a sort the court is able to redress ."[43] The emphasized words in the sentence quoted from Lawson -injury, causation, and redressability-are the three constitutional standing requirements as outlined by the U.S. Supreme Court in Lujan.[44] To provide clarity to Kentucky's standing doctrine, we formally adopt the Lujan test as the constitutional standing doctrine in Kentucky as a predicate for bringing suit in Kentucky's courts.
So, at bottom, for a party to sue in Kentucky, the initiating party must have the requisite constitutional standing to do so, defined by three requirements: (1) injury, (2) causation, and (3) redressability. In other words, "A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."[45] "[A] litigant must demonstrate that it has suffered a concrete and particularized injury that is either actual or imminent ...."[46] "The injury must be ... 'distinct and palpable,' and not 'abstract' or 'conjectural' or 'hypothetical.' "[47] "The injury must be 'fairly' traceable to the challenged action, and relief from the injury must be 'likely' to follow from a favorable decision."[48]
While the justiciable causes language only appears in § 112 (5), which specifically and only enumerates Kentucky circuit-court jurisdiction, the standing doctrine applies to cases brought before all Kentucky courts. Section 112 (5) places original jurisdiction over a case in the circuit court; this means that all cases, not expressly designated by a rule of law to be heard by another court, must appear before the circuit court, the trial court of general jurisdiction. And recall that the circuit court "shall have original jurisdiction of all justiciable causes ." If a case is not justiciable, specifically because the plaintiff does not have the requisite standing to sue, then the circuit court cannot hear the case. And because both this Court and the Court of Appeals "shall have appellate jurisdiction only ," logically speaking, neither court can adjudicate a case on appeal that a circuit court cannot adjudicate because the exercise of appellate jurisdiction necessarily assumes that proper original jurisdiction has been established first at some point in the case.[49]
Therefore, if a circuit court cannot maintain proper original jurisdiction over a case to decide its merits because the case is nonjusticiable due to the *197 plaintiff's failure to satisfy the constitutional standing requirement, the Court of Appeals and this Court are constitutionally precluded from exercising appellate jurisdiction over that case to decide its merits. This is so because the exercise of appellate jurisdiction to decide the merits of a case necessarily assumes that proper original jurisdiction in the circuit court first exists. Stated more simply, establishing the requisite ability to sue in circuit court is a necessary predicate for continuing that suit in appellate court. In this way, the justiciable cause requirement applies to cases at all levels of judicial relief.
Having outlined Kentucky's standing doctrine, we now turn to determining whether Lettie Sexton has the requisite standing to sue in this case.
C. Sexton lacks standing to sue .
Simply stated, Sexton, by and through her authorized representative, ARH, lacks the requisite standing to sue in this case. We emphasize the crucial determinative fact-because Sexton, not ARH, is the true plaintiff in this case, we must examine the standing requirement through the lens of Sexton's, not ARH's, purported satisfaction.
Sexton has not and will not suffer an "injury" in this case. Under Medicaid statutes and regulations, and as conceded by both parties, Sexton is not financially interested in any way whatsoever in the outcome of this dispute, which, at its core, is over whether ARH can pursue a reimbursement claim from Coventry through the Medicaid administrative process at the Cabinet.[50] Additionally, Sexton has not alleged that she did not receive all the proper medical care she needed. Nor has she alleged that she will be precluded from receiving medical care in the future.
At oral argument, a suggestion was made that in some broad sense Sexton and other Medicaid beneficiaries may have been or might be potentially harmed if ARH decided to withhold future medical care from Sexton because of Coventry's refusal to reimburse ARH for such care, absent administrative oversight of that decision. But the fear of ARH denying future medical care, a "conjectural" and "hypothetical" injury, cannot establish the requisite injury component to satisfy the standing doctrine. Additionally, "[plaintiffs] cannot manufacture standing merely ... based on their fears of hypothetical future harm that is not certainly impending."[51]
Nor can Medicaid beneficiaries' purported interest in maintaining the integrity of the system satisfy the standing requirement. This is exactly the type of "abstract, conjectural, and hypothetical injury" that fails the injury-in-fact standing requirement: "[I]t would exceed [constitutional] limitations if, at the behest of [the legislature] and in the absence of any showing of concrete injury, we were to entertain citizen suits to vindicate the public's nonconcrete interest in the proper administration of the laws. ... The party bringing suit must show that the action injures him in a concrete and personal way."[52]
*198 Additionally, it has been argued that federal and state Medicaid statutes and regulations themselves create standing for Sexton to sue in court because they mandate a Medicaid State Fair Hearing be conducted to ascertain misconduct on the part of Coventry and that no such hearing was conducted. But, "deprivation of a procedural right without some concrete interest that is affected by the deprivation-a procedural right in vacuo -is insufficient to create ... standing. Only a 'person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy.' "[53]
If a court were to instruct the Cabinet to conduct an administrative hearing regarding Coventry's denial of reimbursement to ARH, nothing in Sexton's life would change. Regardless of the outcome of this administrative hearing, Sexton would be no better or worse off than before the hearing was conducted. Furthermore, "[i]t is settled that [the legislature] cannot erase [constitutional] standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."[54] The U.S. Supreme Court has additionally instructed:
[The legislature's] role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. [Constitutional] standing requires a concrete injury even in the context of a statutory violation. For that reason, [a plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.[55]
Sexton's lack of standing becomes clearer when one looks at the root of what is being sought in this case. ARH is using Sexton as the front to redress its own potential loss. Coventry denied reimbursement to ARH in this case-ARH seeks to recover that reimbursement in some way circuitous or at least establish some process to appeal from the decisions of managed-care organizations not to reimburse providers for patient care. These are the true injuries in this case, having nothing to do with Sexton.
We acknowledge two important points. First, the legislature has amended Kentucky's legislative Medicaid reimbursement scheme to provide ARH redress should this situation arise again.[56] Second, it appears ARH can seek, and has sought, redress of its reimbursement grievances against MCOs by filing its own lawsuit.[57]
*199 Concern has been raised over the limited, if not completely absent, oversight over the decisions of managed-care organizations that fail to provide reimbursement to hospitals for coverage provided to Medicaid beneficiaries. Such a concern begs legislative, not judicial, redress.
Our decision today is not that the Cabinet correctly decided that Sexton did not have the requisite standing to seek redress through an administrative agency hearing; rather, it is that Sexton does not have the requisite standing to seek redress for this alleged injury in a Kentucky court. Whether a party has the requisite standing to seek redress through an administrative agency is an entirely different question than whether a party has the requisite standing to seek redress through a Kentucky court.[58]
If Sexton had the requisite standing to afford this Court the ability to hear her case on the merits, then we would analyze the issue of whether she had the requisite standing to have her case heard by the Cabinet, an administrative agency. But because Sexton does not have the requisite standing to sue, because the legislature does not have the power to confer constitutional standing where none exists, and because the standing issue summarily decides this case, we need not reach the sovereign immunity issue, nor any of the other issues raised in this case.
III. CONCLUSION.
We hold that it is the constitutional responsibility of all Kentucky courts to consider, even upon their own motion, whether plaintiffs have the requisite standing, a constitutional predicate to a Kentucky court's adjudication of a case, to bring suit. We adopt the United States Supreme Court's test for standing as announced in Lujan v. Defenders of Wildlife.[59] Under that test, we hold that Sexton lacks the requisite standing to sue in this case. Therefore, we reverse the Court of Appeals, vacate the decision of the trial court, and remand this case to the trial court with instructions to dismiss Sexton's petition for judicial review.
All sitting. Minton, C.J., Cunningham, Hughes, Keller, VanMeter and Venters, JJ., concur. Wright, J., dissents by separate opinion.

504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

This argument is a reoccurring one used by several managed-care organizations that has resulted in numerous pending cases in the Court of Appeals.

All parties now agree that the Court of Appeals erred by applying KRS 45A.235 to this case.

543 S.W.3d 575, 578 (Ky. 2018).

292 S.W.3d 883 (Ky. 2009).

See, e.g., Summit Med. Assocs., P.C. v. Pryor, 180 F.3d 1326, 1334-35 (11th Cir. 1999) (holding that a party may not take an immediate appeal of a trial court's decision regarding standing because appealing such issue fails the collateral order doctrine); compare SCI Texas Funeral Servs., Inc. v. Hijar, 214 S.W.3d 148, 153 (Tex. App. 2007) (holding that a party may take an immediate appeal of a trial court's decision regarding standing for the purposes of class certification).

Pryor, 180 F.3d at 1334 (11th Cir. 1999) ; see Crymes v. DeKalb County, 923 F.2d 1482, 1484-85 (11th Cir. 1991) (holding the same in the specific context of ripeness); see also Children's Healthcare Is a Legal Duty, Inc. v. Deters, 92 F.3d 1412, 1418 (6th Cir. 1996) ; Triad Assocs., Inc. v. Robinson, 10 F.3d 492, 496-97 n.2 (7th Cir. 1993) ; Shanks v. City of Dallas, 752 F.2d 1092, 1099 n. 9 (5th Cir. 1985) ; City of Detroit v. Grinnell Corp., 495 F.2d 448, 474-75 (2d Cir. 1974).

Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

36 C.J.S. Federal Courts § 432.

Breathitt County, 292 S.W.3d at 886-87.

Ready v. Jamison, 705 S.W.2d 479, 482 (Ky. 1986).

323 S.W.3d 702, 703 (Ky. 2010).

This Court in Lawson v. Office of Atty. Gen. recognized this to be the case. 415 S.W.3d 59, 67 (Ky. 2013).

Graden v. Conexant Sys., Inc., 496 F.3d 291, 295 (3d Cir. 2007).

13A Fed. Prac. & Proc. Juris. § 353 (3d ed.) (quoting CGM, LLC v. BellSouth Telecomms., Inc., 664 F.3d 46, 51-53 (4th Cir. 2011) ).

"Because [constitutional] standing to sue is an essential aspect of ... courts' ... jurisdiction, it cannot be waived. It may be challenged for the first time at any time during the pendency of the proceedings and, if none of the parties raises it, the ... courts (both trial and appellate) may, and indeed have a duty to, raise the issue sua sponte if there is any doubt about it." Joan Steinman, Shining a Light in a Dim Comer: Standing to Appeal and the Right to Defend a Judgment in the Federal Courts, 38 Ga. L. Rev. 813 (2004) (citing Adarand Constructors, Inc. v. Mineta, 534 U.S. 103, 110, 122 S.Ct. 511, 151 L.Ed.2d 489 (2001) ; Boeing Co. v. Van Gemert, 444 U.S. 472, 488 n.4, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980) (Rehnquist, J., dissenting); Juidice v. Vail, 430 U.S. 327, 331, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) ).

See Adarand Constructors, Inc. v. Mineta, 534 U.S. 103, 110, 122 S.Ct. 511, 151 L.Ed.2d 489 (2001) ("We are obliged to examine standing sua sponte where standing has erroneously been assumed below."); see also, e.g., Community First Bank v. National Credit Union Admin., 41 F.3d 1050, 1053 (6th Cir. 1994) ("Standing is not an affirmative defense that must be raised at risk of forfeiture. Instead, it is a qualifying hurdle that plaintiffs must satisfy even if raised sua sponte by the court."); Bench Billboard Co. v. City of Cincinnati, 675 F.3d 974, 983 (6th Cir. 2012) ("The issue of standing, however, may be raised sua sponte ."). Judge Batchelder of the Sixth Circuit wrote an extremely persuasive concurring opinion in Children's Healthcare is a Legal Duty, Inc. v. Deters explaining why a court should raise the issue of standing sua sponte on an interlocutory appeal. 92 F.3d 1412, 1418-20 (6th Cir. 1996).

For example, a private bakery, acting as the sole defendant, who may have a legitimate argument that the plaintiff does not possess the requisite standing to bring suit, would not be able to file a facially valid and procedurally proper interlocutory appeal on the basis of sovereign immunity, and the appellate court hearing the case would not be able to reach the issue of standing.

See Ky. Const. § 27 ("The powers of the government of the Commonwealth of Kentucky shall be divided into three distinct departments, and each of them be confined to a separate body of magistracy, to wit: Those which are legislative, to one; those which are executive, to another; and those which judicial, to another."); Ky. Const. § 28 ("No person or collection of persons, being of one of those departments, shall exercise any power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted.").

Erwin Chemerinsky, Constitutional Law, 40 (Vicki Been et al. eds., 5th ed. 2013).

(emphasis added).

Chemerinsky, at 40.

Id.

Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

Chemerinsky, at 45.

Id.

John W. Curran, Who's Standing in the District After Grayson v. AT&T Corp.? The Applicability of the Case-or-Controversy Requirement in D.C. Courts, 62 Am. U. L. Rev. 739, 740 (2012) (citing N.Y. State Club Ass'n v. City of New York, 487 U.S. 1, 8 n.2, 108 S.Ct. 2225, 101 L.Ed.2d 1 (1988) ("[T]he special limitations that Article III of the Constitution imposes on the jurisdiction of the federal courts are not binding on the state courts.") ).

Wyatt Sassman, A Survey of Constitutional Standing in State Courts , 8 Ky. J. Equine, Agric. & Nat. Resources L. 349, 369-70 (2016).

Lexington Retail Beverage Dealers Ass'n v. Dep't of Alcoholic Beverage Control Bd., 303 S.W.2d 268, 269-70 (Ky. 1957).

Id.

Id. (citing Wegener v. Wehrman, 312 Ky. 445, 227 S.W.2d 997, 998 (Ky. 1950) ).

Bailey v. Pres. Rural Roads of Madison Cnty., Inc., 394 S.W.3d 350, 355 (Ky. 2011).

See Bailey, 394 S.W.3d at 356 ; see also Interactive Gaming, 425 S.W.3d at 112-15. Kentucky does recognize taxpayer standing in specific circumstances. See Price v. Commonwealth, Transp. Cabinet, 945 S.W.2d 429, 432-33 (Ky. App. 1996) (citing Rosenbalm v. Commercial Bank, 838 S.W.2d 423 (Ky. App. 1992) (collecting cases where "Kentucky has consistently recognized taxpayer standing") ).

Linda R.S. v. Richard D., 410 U.S. 614, 617 n.3, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973) (citing Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205, 212, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972) (White, J., concurring); Hardin v. Kentucky Utilities Co., 390 U.S. 1, 6, 88 S.Ct. 651, 19 L.Ed.2d 787 (1968) ).

Linda R.S., 410 U.S. at 617 n.3, 93 S.Ct. 1146 (quoting Sierra Club v. Morton, 405 U.S. 727, 732 n.3, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) ).

Ky. Const. § 112 (5) (emphasis added).

Ky. Const. § 111 (2) (emphasis added).

Ky. Const. § 110 (2)(a) (emphasis added).

Ky. Const. § 113 (6) (emphasis added).

258 U.S. 126, 42 S.Ct. 274, 66 L.Ed. 499 (1922).

See Flast v. Cohen, 392 U.S. 83, 95, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) ("[N]o justiciable controversy is presented when ... there is no standing to maintain the action.") (emphasis added) (citing Tileston v. Ullman, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943) ; Frothingham v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923) ); Steel Co. v. Citizens for a Better Envt. 523 U.S. 83, 102, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) ("Standing to sue is part of the common understanding of what it takes to make a justiciable case.") (emphasis added).

Lawson v. Office of Atty. Gen., 415 S.W.3d 59, 67 (Ky. 2013) (citing Ky. Const. § 112 ) (emphasis added); Rose v. Council for Better Education, 790 S.W.2d 186 (Ky. 1989).

Lawson, 415 S.W.3d at 67 (emphasis added) (citing Ky. Const. § 112 ; Rose, 790 S.W.2d at 186 ).

504 U.S. at 560-61, 112 S.Ct. 2130.

Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (overruled by Lexmark Intern., Inc. v. Static Control Components, Inc., 572 U.S. 118, 134 S.Ct. 1377, 1386, 188 L.Ed.2d 392 (2014) on other grounds).

Massachusetts v. EPA, 549 U.S. 497, 517, 127 S.Ct. 1438, 167 L.Ed.2d 248 (2007) (citing Lujan, 504 U.S. at 578, 112 S.Ct. 2130 ).

Allen, 468 U.S. at 751, 104 S.Ct. 3315.

Id.

Black's Law Dictionary defines "Appellate Jurisdiction" as, "The power of a court to review and revise a lower court's decision ." (10th ed. 2014). In contrast, Black's Law Dictionary defines "Original Jurisdiction" as, "A court's power to hear and decide a matter before any other court can review the matter ."

See 42 C.F.R. § 447.15.

Clapper v. Amnesty Intern. USA, 568 U.S. 398, 416, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013) ("We hold that respondents lack Article III standing because they cannot demonstrate that the future injury they purportedly fear is certainly impending ....") (citing Pennsylvania v. New Jersey, 426 U.S. 660, 664, 96 S.Ct. 2333, 49 L.Ed.2d 124 (1976) ).

Summers v. Earth Island Inst., 555 U.S. 488, 497, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009) (quoting Lujan, 504 U.S. at 580-81, 112 S.Ct. 2130 (Kennedy, J., concurring) ) (emphasis in original).

Summers, 555 U.S. at 496, 129 S.Ct. 1142 (quoting Lujan, 504 U.S. at 572 n.7, 112 S.Ct. 2130 ) (emphasis in original).

Spokeo, Inc. v. Robins, --- U.S. ----, 136 S.Ct. 1540, 1547-48, 194 L.Ed.2d 635 (2016) (quoting Raines v. Byrd, 521 U.S. 811, 820 n.3, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997) ); see also Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 100, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979) ("In no event ... may Congress abrogate the Art. III minima.").

Spokeo, 136 S.Ct. at 1549 (citing Summers, 555 U.S. at 496, 129 S.Ct. 1142 ) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation ... is insufficient to create [constitutional] standing.").

See KRS 205.646(2) (eff. Apr. 8, 2016); see also KAR 17:035E, 040E.

In fact, ARH has sued Coventry elsewhere, in federal court, for, in part, essentially the true relief it seeks here-obtaining reimbursement, or the chance to obtain reimbursement, for the services it provides to patients. See, e.g., Appalachian Reg'l Healthcare, Inc. v. Coventry Health & Life Ins. Co., 214 F.Supp.3d 606 (E.D. Ky. 2016) (dismissing ARH's complaint); Appalachian Reg'l Healthcare, Inc. v. Coventry Health & Life Ins. Co., 970 F.Supp.2d 687 (E.D. Ky. 2013) (notably, holding that ARH itself has standing to sue Coventry ).

For a discussion of this distinction, see 13B Fed. Prac. & Proc. Juris. § 3531.13 (3d ed.). We leave the issue of standing in an administrative agency adjudication for another day.

504 U.S. at 560-561, 112 S.Ct. 2130.