RENDERED: OCTOBER 28, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0477-DG

KENTUCKY UNEMPLOYMENT INSURANCE                    APPELLANT
COMMISSION


                        ON REVIEW FROM THE COURT OF APPEALS
V.                              NO. 2017-CA-01156
                           JEFFERSON CIRCUIT COURT
                              NO. 16-CI-002236


MICHAEL NICHOLS; AND                                        APPELLEES
NORTON HEALTHCARE, INC.



**OPINION OF THE COURT BY CHIEF JUSTICE MINTON**

**REVERSING AND REMANDING**

We granted discretionary review to address the specific question of law of whether a non-attorney employee appearing on behalf of a corporation at unemployment insurance (UI) referee hearings as authorized by KRS[1] 341.470(3) is engaging impermissibly in the practice of law. After reviewing the matter, we find Nichols lacks standing to question the validity of KRS 341.470(3). So we reverse the decision of the Court of Appeals that invalidated KRS 341.470(3) on constitutional grounds, finding it helpful to correct the Court of Appeals panel's interpretation of this Court's precedent, *Turner v.*

---

[1] Kentucky Revised Statute.

*Kentucky Bar Ass'n.*[2]  Because our decision today does not address the merits of Nichols's appeal, we remand the case to the Court of Appeals to address the merits.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Michael Nichols worked for Norton Healthcare as a Clinical Engineering Sterilization Maintenance Specialist from 2014 to 2015.  In that role, he performed after-hours equipment maintenance and repairs on an on-call basis. In late September of 2015, Nichols told his supervisor that he no longer wanted to do the on-call work.  Norton alleges that in October 2015 Nichols was asked to complete annual-maintenance, but he failed to do so, causing Norton to be in violation of regulatory requirements.  Norton further contends that the next month it discovered Nichols had falsified the documents of his annual maintenance review and he had submitted a purchase order for an outside vendor to perform the work.  Nichols took responsibility for these infractions, and Norton discharged him for misconduct related to his work.

Nichols made a claim for UI benefits.  In his application, he reported that he was separated from his employment by layoff due to a lack of work.[3] Nichols's claim was denied, he appealed, and a referee hearing was held to

---

[2] 980 S.W.3d 560 (Ky. 1998).

[3] In appealing the referee's findings to the Kentucky Unemployment Commission (KUIC), Nichols argued that when he noted in his application that he was discharged for a "lack of work," he thought that meant his failure to complete his assigned tasks.  KUIC ultimately denied Nichols's unemployment benefits because he failed to report honestly the reason he was discharged.  That issue is unrelated to the legal issues we address in this review.

determine the reason he was discharged.[4]  Two days of referee hearings were held at which appeared Nichols, his counsel, a referee serving as fact-finder, and Nichols's main supervisor when he was employed at Norton, Scott Skinner, who was Norton's employee-representative.

At the first hearing, the referee asked Skinner questions about the documentation and facts of Nichols's discharge.  At the second hearing, Skinner questioned Nichols.  Nichols was represented by counsel at both these hearings.  Following the second hearing, the referee rendered a decision finding that Nichols was discharged for misconduct associated with his work.  Nichols appealed to KUIC, which affirmed the referee's decision.

Nichols then sought judicial review in the Jefferson Circuit Court in which he argued that KUIC committed three errors: 1) it failed to support its factual findings by substantial evidence, 2) it erred by placing the burden on him to show his lack of misconduct, and—the issue before us today—3) the proceedings before the referee and the KUIC were unconstitutionally conducted because of Skinner's appearance as a non-attorney representative on behalf of Norton.  As to the third issue, Nichols argued that KRS 341.470(3)(a) violates the separation-of-powers doctrine of the Kentucky Constitution because only the judicial department of state government can determine who may engage in the practice of law.[5]  So, Nichols argued, Skinner's appearance on behalf of

---

[4] A referee hearing is the initial proceeding in unemployment insurance claims. A referee serves as the fact-finder to determine the factual basis of the employee's separation from employment.

[5] *See* KY. CONST. § 116.

3

Norton was in violation of SCR[6] 3.020.[7]  Nichols alleged he was harmed by this violation because Skinner testified falsely about the reason for which Nichols was discharged and the allegedly false testimony would have been prevented if an attorney had appeared on behalf of Norton at the hearing.  The circuit court upheld the statute, finding no violation of the separation-of-powers doctrine because a UI hearing is not a proceeding in the court of justice, so an attorney is not required.

Nichols appealed to the Court of Appeals, which reversed the circuit court's ruling after finding that corporations must be represented by counsel at UI referee hearings.  In reaching that decision, the appellate panel relied on *Turner*, which held that workers' compensation specialists were non-lawyer representatives improperly engaged in the practice of law.[8]  The specialists were neither licensed attorneys themselves nor supervised by a licensed attorney, but they mediated claims between employees and employers.[9]  The Court of Appeals panel found an employee-representative at the UI referee

---

[6] Supreme Court Rule.

[7] SCR 3.020 ("The practice of law is any service rendered involving legal knowledge or legal advice, whether of representation, counsel or advocacy in or out of court, rendered in respect to the rights, duties, obligations, liabilities, or business relations of one requiring the services. But nothing herein shall prevent any natural person not holding himself out as a practicing attorney from drawing any instrument to which he is a party without consideration unto himself therefor. An appearance in the small claims division of the district court by a person who is an officer of or who is regularly employed in a managerial capacity by a corporation or partnership which is a party to the litigation in which the appearance is made shall not be considered as unauthorized practice of law.").

[8] 980 S.W.3d at 565.

[9] *Id.* at 564.

4

hearing to be comparable to the workers' compensation specialists in *Turner,* so it held that KRS 341.470(3) encroaches upon the judiciary's constitutional rule-making power related to the practice of law.

Upon review, we find Nichols lacks standing to contest the constitutional validity of KRS 341.470(3) because he has failed to show an injury in fact or that he has suffered any harm from Norton's lack of legal representation. Because Nichols lacks standing to bring this claim, our analysis stops there, and we are constrained to remand this case to the Court of Appeals to review the merits of Nichols's appeal. But we do hold that the Court of Appeals panel misinterpreted *Turner.*

## II. ANALYSIS

### A. Nichols lacks standing to contest the constitutionality of KRS 341.470(3).

A court may only rule on the merits of justiciable issues, or, in other words, matters that involve an actual case or controversy.[10] One key component of justiciability is the standing requirement.[11] In *Commonwealth Cabinet for Health & Fam. Servs., Dep't for Medicaid Servs. v. Sexton ex rel. Appalachian Reg'l Healthcare, Inc.,*[12] we adopted the federal courts' standard for constitutional standing.[13] If not otherwise provided by statute, a plaintiff only has standing to bring a claim if that plaintiff alleges "a personal injury fairly

---

[10] *Overstreet v. Mayberry,* 603 S.W.3d 244, 250 (Ky. 2020).

[11] *Id.* at 252.

[12] 566 S.W.3d 185, 196 (Ky. 2018).

[13] *Id.*

traceable to the defendant's allegedly unlawful conduct and [that injury is] likely to be redressed by the requested relief."[14] *Sexton* also clarified that constitutional standing cannot be waived, and it is a court's duty to ensure it only addresses purely justiciable claims.[15] So, as *Sexton* instructs, our analysis of the issues in the present case begins with assessing whether Nichols has standing to contest the constitutional validity of KRS 341.470(3). We ask then if Nichols's right to UI benefits has been impaired, if that harm is traceable to a non-attorney's appearance for Norton at Nichols's referee hearing, and if his harm would be remedied by a holding that the statute violates the separation-of-powers doctrine.

We first ask if Nichols has alleged an injury in fact.[16] In order to confer standing, an injury cannot be speculative but instead must be direct and imminent.[17] In *Merrick v. Smith*, our predecessor court held "[i]t is an elementary principle that constitutionality of a law or its application is not open to challenge by a person or persons whose rights are not injured or jeopardized thereby."[18] Thus, for Nichols to have standing to claim that KRS 341.470(3) violates the separation-of-powers doctrine, he must show that his

---

[14] *Id.*

[15] *Id.* at 192 ("We hold that all Kentucky courts have the constitutional duty to ascertain the issue of constitutional standing, acting on their own motion, to ensure that only *justiciable causes* proceed in court, because the issue of constitutional standing is not waivable.").

[16] *Id.* at 196.

[17] *Id.*

[18] 347 S.W.2d 537, 538 (Ky. 1961).

right to UI benefits was injured or placed in jeopardy by its violation. We find that Nichols has failed to show that KRS 341.470(3) allowing non-attorneys to appear on behalf of their corporate employer has prejudiced him because he was denied benefits for reasons entirely independent of Scott Skinner's appearance at the referee hearing.[19]

The KUIC's order affirming the referee's decision to deny Nichols's unemployment benefits stated:

> Claimant knowingly misrepresented or concealed the nature of his separation from the captioned employer a fact relevant and material to the determination of the benefit entitlement. Without question . . . he is disqualified from receiving benefits, on this basis . . . .

> Finally we note that if Claimant had prevailed on the separation issues [the issue of why he was discharged] disqualification would nonetheless be imposed. If a claimant knowingly misrepresents or withholds a fact relevant to the determination of benefit entitlement, he has violated the above-cited statute [KRS 341.370(2)] whether or not said fact would have adversely affected his entitlement to benefits.

The order clarifies that regardless of whether Skinner reported inaccurate information at Nichols's referee hearing, Nichols would have been denied benefits anyway because he himself reported false information on his application for benefits. It cannot be said, then, that KRS 341.470(3) permitting Skinner to appear on Norton's behalf at the referee hearing has prejudiced Nichols's chance to receive UI benefits. KUIC's denial of Nichols's

---

[19] *Steel v. Meek*, 226 S.W.2d 542, 543 (Ky. 1950) (holding that appellant lacked standing to challenge the constitutionality of an absentee voting statute that failed to make provisions for certain disabled groups where appellant failed to show that he, himself, was prejudiced by the alleged discrimination).

7

benefits is entirely unrelated to KRS 341.470(3). An allegation of harm so unrelated to the claimed constitutional violation does not amount to an injury in fact sufficient to support standing.

The circumstances here are like those in *Veltrop v. Commonwealth*, where a Court of Appeals panel held that the defendant had failed to allege a sufficient injury in fact.[20] The defendant argued that a statute violated the separation-of-powers doctrine by limiting the time that breath or blood test results in DUI cases could be taken.[21] The statute at issue required that the results from a test given beyond the two-hour limit were inadmissible as evidence.[22] The defendant argued that the statute was unconstitutional because the legislature had exceeded its authority by creating a rule of court procedure.[23] The Court of Appeals found the defendant lacked standing to contest the separation-of-powers issue.[24] The issue of whether the statute violated the separation-of-powers doctrine had no relevance or application to the defendant's case because her blood test had been given within the two-hour time limit.[25] Because the defendant's rights were not injured in a manner that would make the issue of whether the statute violated the separation-of-

---

[20] 269 S.W.3d 15, 18 (Ky. App. 2008).

[21] *Id.* at 17.

[22] *Id.*

[23] *Id.*

[24] *Id.* at 18.

[25] *Id.*

powers doctrine relevant to her case, she lacked an injury sufficient to confer standing to challenge the statute.[26]

Likewise, here, Nichols has no injury that would make KRS 341.470(3)'s potential constitutional violation applicable to his case. Nichols's claim was ultimately denied for reasons unrelated to the statute permitting Skinner to represent Norton at the referee hearing. Therefore, Nichols has not shown a concrete, particularized injury that would make KRS 341.470(3)'s violating the separation-of-powers doctrine relevant to his case. Consequently, we find that Nichols has not alleged a particularized way he was prejudiced by KRS 341.470(3)'s purported violation of the separation-of-powers doctrine. Thus, Nichols lacks an injury in fact sufficient to support standing to bring this constitutional challenge.

Further, even if we overlooked the ultimate reason that KUIC denied Nichols benefits and instead focused solely on KUIC's ruling that the referee's findings of fact were supported by substantial evidence, Nichols would still lack standing to claim that KRS 341.470(3) violates the separation-of-powers doctrine. While KUIC's substantial-evidence holding could have been affected by a non-attorney appearing on Norton's behalf, making KRS 341.470(3) relevant to the case, Nichols would still lack standing for failure to show causation and redressability.

---

[26] *Id.*

An examination of *Cahoo v. Fast Enterprises*,[27] a federal district court case, supports our finding. In *Cahoo,* the plaintiffs alleged their due-process rights had been harmed by the state's automated computer system that processed unemployment insurance claims.[28] The plaintiffs argued the system had many shortcomings, among them reporting claims as fraudulent when they were not.[29] The plaintiffs brought suit against two corporate entities that created the software and managed the system.[30] The federal court held that the plaintiffs had alleged a sufficient injury in fact because their applications had been inaccurately reported as fraudulent.[31] The court also found the plaintiffs met the causation standing requirements because the automated system was under the direct control of the corporate entities.[32] The court even noted that although one corporate entity was much more involved than the other, it had "contributed to the formation of the policies and the implementation of the system" that caused their harm.[33] Overall, the injury in fact, the plaintiffs' unemployment insurance claims being erroneously reported

---

[27] 508 F. Supp. 3d 162 (E.D. Mich. 2008).

[28] *Id.* at 167.

[29] *Id.* at 177.

[30] *Id.* at 176.

[31] *Id.* ("Even if the Court accepts the defendants' arguments at face value and assumes that UIA employees were involved in the plaintiffs' fraud adjudications at every step of the way, the plaintiffs individually have still demonstrated an injury in fact, namely, the deprivation of their property interests in unemployment benefits without adequate pre- or post-deprivation process.").

[32] *Id.* at 178.

[33] *Id.*

as fraudulent, was directly related to the wrongful conduct, i.e., the management and creation of the system.[34]

In contrast to the plaintiffs in *Cahoo*, Nichols cannot show how the denial of his UI benefits is fairly traceable to Norton's sending a non-lawyer to the referee hearing. In *ACLU v. Nat'l Sec. Agency*,[35] the plaintiff's lack of standing became clear when a panel of the Sixth Circuit Court of Appeals broke down the causal chain from the alleged harm to the wrongful conduct.[36] Overall, six different causal "steps" were needed before the injury could be traced to the wrongful conduct.[37] After assessing that at least two of the links were uncertain, the court held the plaintiffs lacked standing for failing to establish causation.[38] We find similarly here that the causal chain from the alleged wrongful conduct to the alleged harm is too attenuated to support a finding that Nichols has standing.

For example, for this Court to find that the denial of benefits to Nichols is fairly traceable to Skinner's appearing on behalf of Norton at the hearing, we would have to find that employee-representatives are engaging in the practice

---

[34] *Id.* ("These actions amounted to active management and supervision by CSG. And although CSG did not run MiDAS, it monitored the system's performance and conducted cost-benefit analyses. Doing so should have alerted it to the potentially unconstitutional adjudications and collection practices, and it certainly learned about them in June 2015, when the Auditor General published its report. That may fall short of establishing proximate cause, but it satisfies the "fairly traceable" requirement for standing.").

[35] 493 F.3d 644 (6th Cir. 2007).

[36] *Id.* at 674.

[37] *Id.*

[38] *Id.* at 674-75.

11

of law, which violates the separation-of-powers doctrine, that the information Skinner gave was false, that Skinner knew the information he was giving was false, that an attorney appearing on behalf of Norton would have known Skinner was giving false information, and that the presentation of false testimony affected the outcome of the referee hearing. As in *ACLU*, there are too many "steps" that hinge on uncertainty in the causal chain for us to find that any injury suffered is fairly traceable to Skinner's appearance.

Nichols's own arguments only help us further conclude that too much uncertainty remains to find causation has been established. He alleges that Skinner, Norton's employee-representative at the referee hearing, presented false information through testimony and documents containing incorrect information about his responsibilities at work. But Nichols fails to show how an attorney being required to appear on behalf of Norton at the hearing would have prevented such harm. While attorneys have ethical obligations requiring them to avoid presenting false evidence, their duty only extends to falsehoods of which they are aware.[39] Here, it has not been proven that Skinner knew the information he was presenting was incorrect, and even more unlikely an attorney appearing on behalf of Norton would have known. Nichols also notes that fact-witnesses, such as Skinner, are placed under oath at the hearing and are subject to the penalty of perjury. This further diminishes any extra protection Nichols asserts attorneys could provide against false testimony.

---

[39] SCR 3.130(3.3).

12

Finally, Nichols appeared with counsel. He could have alerted his attorney about Skinner's testimony, and his counsel could have addressed them through questioning at the hearing.

Once the causal connection between Nichols's alleged injury (the denial of his benefits) and the wrongful conduct (Norton's being represented by a non-attorney) is broken down, it is clear that, unlike the direct connection in *Cahoo*, too many uncertainties exist to establish that Nichols's denial of benefits is fairly traceable to a non-attorney appearing on behalf of Norton. Because Nichols cannot show that his injury was caused by Norton's lack of counsel at the hearing, he lacks standing to bring his claim.

Lastly, while resolving the case at hand on Nichols's lack of constitutional standing, we feel compelled to address the Court of Appeals panel's interpretation of our holding in *Turner v. Kentucky Bar Ass'n*.[40] In *Turner*, we held that workers' compensation specialists were engaging in the practice of law because they were advising workers' compensation claimants and mediating claims.[41] We held "legal representation by a lay person before an adjudicatory tribunal, however informal, is not permitted . . . [and] such representation involves advocacy that would constitute the practice of law."[42] The Court of Appeals panel felt that *Turner* compelled treatment of the administrative proceedings at hand similarly to the treatment given to circuit

---

[40] 980 S.W.2d 560 (Ky. 1998).

[41] *Id*. at 565.

[42] *Id*. at 564.

actions in which attorneys are required to represent corporations. To clarify, our holding in *Turner* did not rest on the type of proceeding before us but instead on the actions being taken by the non-attorney specialists in the proceedings. It was not that the specialists were simply performing work in administrative tribunals but that they were mediating claims and advising claimants on their legal remedies without themselves being licensed attorneys or working under the direct supervision of a licensed attorney.[43] If no legal advice is being given or legal rights are being adjudicated, it is unlikely this Court would find that the non-attorney is engaging in the practice of law.

### III. CONCLUSION

For the reasons stated above, we remand to the Court of Appeals to resolve Nichols's remaining claims.

Conley, Hughes, Keller, VanMeter, JJ., and Special Justice Jeffrey Edwards, sitting. All concur. Lambert and Nickell, JJ., not sitting.

COUNSEL FOR APPELLANT KUIC:

Amy Cubbage
Sam Flynn
John Ghaelian
Maria "Tess" Russell
Linda Keeton

COUNSEL FOR APPELLEE MICHAEL NICHOLS:

Robyn Smith
Law Office of Robyn Smith

---

[43] *Id.* at 565.

14

J. Gregory Troutman
Troutman Law Office, PLLC


COUNSEL FOR APPELLEE NORTON HEALTHCARE, INC.:

Donna King Perry
Jeremy S. Rogers
Alina Klimkina
Dinsmore & Shohl LLP


COUNSEL FOR AMICUS CURIAE THE UNITED STATES:

Timothy D. Thompson
U.S. Attorney's Office, Western District of Kentucky

Brad Hinshelwood
U.S. Department of Justice


COUNSEL FOR AMICUS CURIAE KENTUCKY CHAMBER OF COMMERCE, ET AL.:

Jay E. Ingle
Jackson Kelly PLLC


COUNSEL FOR AMICUS CURIAE COMMONWEALTH OF KENTUCKY:

Daniel Cameron
Victor B. Maddox
Heather L. Becker
Office of the Attorney General