RENDERED: OCTOBER 24, 2024
TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0403-DG

CONNIE CORNER, INDIVIDUALLY AND        APPELLANT
AS EXECUTRIX OF THE ESTATE OF
THOMAS DUNBAR A/K/A "SAM"
DUNBAR


|  | ON REVIEW FROM COURT OF APPEALS |  |
|---|---|---|
| V. | NO. 2022-CA-0844 |  |
|  | RUSSELL CIRCUIT COURT NO. 20-CI-00150 |  |


TYLER POPPLEWELL; AND KIMBERLY        APPELLEES
KELSEY, AS ADMINISTRATRIX OF THE
ESTATE OF IMOGENE POPPLEWELL


**OPINION OF THE COURT BY JUSTICE CONLEY**

**<u>AFFIRMING</u>**

Thomas Dunbar, a/k/a "Sam," died without issue. Connie Corner, who is not related by blood to Dunbar, probated a will which purportedly left the entirety of his estate to her. Imogene Popplewell was Dunbar's sister and the grandmother of Tyler Popplewell.  Tyler filed a motion in Russell Circuit Court alleging fraud and undue influence against Corner and asked the circuit court to find the will was null and void. Ultimately, after the statute of limitations had run, Corner moved to dismiss because Tyler lacked standing to bring the claim. The trial court sustained the motion and Tyler appealed. After review, the Court of Appeals held that Corner had waived the issue of standing and remanded the case back to the trial court. Corner filed a motion for

discretionary review which this Court granted. Upon review, we hereby affirm the Court of Appeals and order this case remanded to the trial court for a trial on its merits.

## I.     FACTS AND PROCEDURAL HISTORY

Dunbar died on November 29, 2019, without issue. In his later years, Corner provided assistance to Dunbar due to his advanced age. Dunbar's family was unaware that he changed his will leaving the entirety of his estate to Corner. Corner probated this will in Russell District Court on December 16, 2019. Tyler filed suit on April 16, 2020, in Russell Circuit Court alleging that the will was a product of undue influence, fraud, and that Dunbar executed the will without the requisite testamentary capacity. Tyler asked the court to declare the will null and void.

Corner filed an answer to Tyler's complaint in May of 2020, but failed to assert lack of standing as a defense. Prior to the start of the trial, scheduled to begin on February 23, 2022, Corner filed a motion to dismiss the action alleging that Tyler lacked standing under KRS[1] 391.010 and KRS 391.030.[2]  A few days later, on February 17, 2022, Imogene Popplewell, the sister of Dunbar and the grandmother of Tyler, executed an irrevocable assignment of all of her interest in Dunbar's estate to Tyler.

---

[1] Kentucky Revised Statutes.

[2] Filed on February 14, 2022, and noticed to be heard on the 23rd. This was also the same date the jury trial was set to begin.

2

On the 21st of February, Corner filed an amended motion, which was also noticed to be heard the same day as the trial. Apparently, the trial judge hearing the matter was ill, so the matter was continued. Corner filed a third motion to dismiss on March 3, 2022, with the matter noticed to be heard on April 12, 2022. The attorney for Tyler claimed he never received notice for the rescheduled hearing and was attending a funeral during the hearing. The trial court granted Corner's motion to dismiss on April 12th in a perfunctory order. Tyler filed a motion to set aside the judgment because he did not receive notice of the hearing. On April 22nd, Corner filed a motion to amend the order of dismissal to include specific findings of facts and conclusions of law, namely that the trial court's dismissal was based on Tyler's lack of standing.

On May 10, Imogene Popplewell filed a motion to intervene as successor plaintiff to Tyler, and Tyler filed an assignment of his interests in the litigation to Imogene. On June 15, the trial court issued an amended order dismissing the case with prejudice based on Tyler's lack of standing and cited the mailbox rule in denying Tyler's motion to set aside the judgment. The trial court also denied Imogene's motion to intervene as untimely since it was beyond the statute of limitations.

Tyler appealed and the Court of Appeals reversed the trial court. The Court of Appeals held that Corner had waived the issue of standing based on its reading of *Harrison v. Leach,* 323 S.W.3d 702 (Ky. 2010). Corner then filed a motion for discretionary review which we granted. We now review the merits of the appeal.

3

## II.   ANALYSIS

Corner now argues before this Court that the Court of Appeals erred when it applied *Harrison* to the facts of this case. Tyler, of course insists the Court of Appeals was correct. He also argues, since Imogene assigned all of her rights in the litigation to Tyler, and Imogene filed a motion to intervene as a plaintiff, that her filing related back to the date of the original filing. As such, Tyler claims, the statute of limitations should not apply.

"Dismissal for lack of statutory standing is properly viewed as dismissal. . . for failure to state a claim [upon which relief may be granted]."[3] *Commonwealth Cabinet for Health & Fam. Servs., Dep't for Medicaid Servs. v. Sexton by & through Appalachian Reg'l Healthcare, Inc.,* 566 S.W.3d 185, 191 (Ky. 2018) (quoting 13A Fed. Prac. & Proc. Juris. § 353 (3d ed.)) "[A] motion to dismiss for failure to state a claim upon which relief may be granted is a pure question of law, a reviewing court owes no deference to a trial court's determination; instead, an appellate court reviews the issue de novo." *Fox v. Grayson,* 317 S.W.3d 1,7 (Ky. 2010).

---

[3] *Commonwealth Cabinet for Health & Fam. Servs., Dep't for Medicaid Servs. v. Sexton by & through Appalachian Reg'l Healthcare, Inc.,* clarifies the distinction between statutory and constitutional standing. 566 S.W.3d 185, 191 (Ky. 2018). "Though all are termed "standing," the differences between statutory, constitutional, and prudential standing are important. Constitutional and prudential standing are about, respectively, the constitutional power of a ... court to resolve a dispute and the wisdom of so doing. Statutory standing is simply statutory interpretation: the question it asks is whether [the legislature] has accorded *this* injured plaintiff the right to sue the defendant to redress his injury." *Id.* (quoting *Graden v. Conexant Sys., Inc.,* 496 F.3d 291, 295 (3d Cir. 2007)).

Corner argues that the Court of Appeals erred by applying *Harrison* in this case because in *Harrison*, the issue of standing was not raised in the trial court at all. Here, as Corner correctly points out, she filed a motion to dismiss for lack of standing below. Our holding in *Harrison* is as follows:

> [W]e conclude that lack of standing is a defense which must be timely raised or else will be deemed waived. This use-it-or-lose-it approach to standing is logical because, as an Illinois appellate court noted, **"the purpose of … defenses, such as lack of standing, is to afford the defendants the means of obtaining at the outset of litigation summary disposition of issues of law or easily proved issues of fact."** Since a defendant benefits from early termination of a case due to a plaintiff's lack of standing, we believe a defendant should not be permitted to stand mute at the trial court level regarding standing, only to raise the issue on appeal (or, as in this case, continue to ignore the issue but ultimately benefit from an appellate court's raising it on its own). **Such an approach would be a grossly inefficient use of the time and resources of the parties and of trial courts and would be a disincentive for attorneys to comply with their duty thoroughly and timely to determine the legal standing of all parties at the infancy of litigation**.

*Id.* at 708-09, (emphasis added). While it is true that our holding in *Harrison* made reference to "standing mute at the trial level," we were simply referring to the facts in that particular case. The reasoning that undergirds the holding is that defendants should promptly dispose of issues, including issues of standing, "at the outset" or "infancy of litigation." *Id.* Since Corner waited two years to raise the issue, the case could hardly be said to be in its infancy.

The Court of Appeals held that Corner waived the standing issue by not asserting it in her first response to the complaint. This is a sound interpretation of *Harrison* and consistent with the "use it or lose it" reasoning behind it. Therefore, we now adopt this holding. For unless defendants in the

5

future can make a colorable showing of why it is unjust or unworkable to raise statutory standing in their initial answer, our adoption of this rule will lead to a prompt disposition of cases so that the parties with proper standing can be determined and do so without the appearance of gamesmanship which so often tarnishes the reputation of our profession. As to the other issues raised by both parties in their briefs, we find this issue dispositive and will not address them.

### III.   CONCLUSION

Based on the foregoing, we hereby affirm the decision of the Court of Appeals and remand the matter to the trial court for a trial on the merits.

All sitting. VanMeter, C.J.; Bisig, Keller, Lambert, Nickell, Thompson JJ., concur. Keller, J., concurs in result only.


BRIEF FOR APPELLANTS:

Theodore H. Lavit
Theodore H. Lavit & Associates, P.S.C.

BRIEFS FOR APPELLEES:

Joel R. Smith
The Law Office of Joel R. Smith and Associates, PLLC

6